Frances FISHER, Appellee,

v.

James SNYDER et al., Appellants.

No. 72-1599.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1973.

Decided April 16, 1973.

Charles W. Baskins, North Platte, Neb., and William P. Mueller, Ogallala, Neb., for appellants.

Theodore L. Kessner, Lincoln, Neb., for appellee.

Before LAY and BRIGHT, Circuit Judges, and NICHOL, District Judge.*

BRIGHT, Circuit Judge.

Appellants, as members of the school board of a rural Nebraska county district, dismissed appellee, Frances Fisher, as a high school teacher at the close of

* Sitting by designation.

the 1972 school year, giving as a reason her "unbecoming conduct" outside the classroom. Mrs. Fisher thereafter brought an action against the members of the board under 42 U.S.C. § 1983, alleging that constitutionally impermissible reasons underlay their dismissal action. The district court ordered her reinstatement,[1] and the board members bring this appeal. We affirm the district court.

The relevant facts are not in dispute. Mrs. Fisher, a middle-aged[2] divorcee, was employed at the high school in Tryon, Nebraska,[3] from 1970 to 1972. Her married son, then 26 years old, lived and taught in the neighboring town of Stapleton, Nebraska. Mrs. Fisher lived alone in a one-bedroom apartment. On several occasions, young ladies, married couples, and young men, who were friends of her son, visited Tryon. Because hotel and motel accommodations were generally sparse and unavailable in Tryon, Mrs. Fisher followed the advice of the secretary of the school board and allowed these guests to stay overnight at her apartment. Cliff Rowan, age 26, was a particularly frequent visitor. Rowan's parents lived in California. He, therefore, regularly visited Mrs. Fisher during his school vacations and at other times, and she referred to him as her second son. In the spring of 1972, Rowan spent about a week in Tyron visiting school classes as a means of fulfilling certain of his college requirements. Mrs. Fisher made arrangements with school administrators for this visitation and it was reported in the local newspaper.

Following Rowan's visit, the school board notified Mrs. Fisher that her contract would not be renewed at the end of the 1972 school year. At her request, pursuant to provisions of Nebraska law, the board afforded Mrs. Fisher a hearing relating to the notice of dismissal. Following this hearing, the board made findings justifying the dismissal which, as here pertinent, read:

(a) Frances A. Fish [sic] is a single woman.

(b) That on several occasions during the current school year men, not related to Frances A. Fisher, stayed in her apartment in Tryon, McPherson County, Nebraska, on several occasions ranging from one night to a period of at least one week, this constitutes conduct unbecoming a teacher.

The district court held the dismissal impermissible as arbitrary and capricious in violation of Mrs. Fisher's right to substantive due process under the Fourteenth Amendment. As a further basis for its decision, the court determined that the board, in dismissing Mrs. Fisher, invaded her constitutionally protected rights of association and privacy. Affirming on the substantive due process ground, we do not reach the issues of association or privacy.

■ Nebraska by statute requires that notice and a hearing be given nontenured teachers who are to be terminated. Neb.Rev.Stat. § 79–1254.[4] The ap-

---

1. Fisher v. Snyder, 346 F.Supp. 396 (D.Neb.1972).

2. Mrs. Fisher's age is not disclosed by the record. The brief filed by amici curiae states that she is 55.

3. Tryon has a population of less than 100.

4. The statute provides:

Any contract of employment between an administrator or a teacher who holds a certificate which is valid for a term of more than one year * * * shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before May 15 to amend or to terminate the contract at the close of the contract period; *Provided*, that the secretary of the board shall, not later than April 15, notify each administrator or teacher in writing of any conditions of unsatisfactory performance or other conditions because of a reduction in staff members or change of leave of absence policies of the board of education which the board considers may be cause to either terminate or amend the contract for the ensuing school year. Any teacher or administrator so notified shall have the right to file within five

<br>

pellees concede that the school board, in dismissing Fisher, complied with the statute, and its judgment, therefore, must be afforded judicial deference "so long as the board does not act unreasonably, arbitrarily, capriciously, or unlawfully." Smith v. Board of Educ., 365 F. 2d 770, 782 (8th Cir. 1966); see Bradford v. School Dist. No. 20, 364 F.2d 185, 189 (4th Cir. 1966); Johnson v. Branch, 364 F.2d 177, 180–181 (4th Cir. 1966), cert. denied, 385 U.S. 1003, 87 S. Ct. 706, 17 L.Ed.2d 542 (1967); Brooks v. School Dist., 267 F.2d 733, 739 (8th Cir.), cert. denied, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 151 (1959).

However, a high school teacher may successfully argue that his dismissal was arbitrary and capricious if he can prove:

* * * that each of the stated reasons [underlying his dismissal] is trivial, or is unrelated to the educational process or to working relationships within the educational institution, or is wholly unsupported by a basis in fact. [McEnteggart v. Cataldo, 451 F.2d 1109, 1111 (1st Cir. 1971), cert. denied, 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972).]

Drown v. Portsmouth School District, 451 F.2d 1106, 1108 (1st Cir. 1971); see Cook County College Teachers Union, Local 1600, AFT v. Byrd, 456 F.2d 882, 889 (7th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972); Freeman v. Gould Special School Dist., 405 F.2d 1153, 1167 n.9 (Lay, J., dissenting); Johnson, supra, 364 F.2d at 181–182; cf. Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).

Thus, while a school board may legitimately inquire into the character and integrity of its teachers, see Beilan v. Board of Public Educ., 357 U.S. 399, 405, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958); Adler v. Board of Educ., 342 U.S. 485, 493, 72 S.Ct. 380, 96 L.Ed. 517 (1952); Jenkyns v. Board of Educ., 111 U.S.App.D.C. 64, 294 F.2d 260, 261 (1961); James v. West Virginia Bd. of Regents, 322 F.Supp. 217, 228–230 (S. D.W.Va.1971), it must be certain that it does not arbitrarily or capriciously dismiss a teacher based on unsupported conclusions drawn from such inquiries.

In seeking to justify the dismissal in this case, the school board argues that the evidence developed at the board hearing supported its finding Mrs. Fisher guilty of conduct unbecoming a teacher. In the board's view, "the inferences from her social behavior are that there was a strong potential of sexual misconduct." The board does not actually accuse Mrs. Fisher of immoral conduct but "of social misbehavior that is not conducive to the maintenance of the integrity of the public school system." [Appellants' Brief at 12, 13.]

But here, there is no proof of improper conduct. The only whit of evidence offered as support for the board's conclusion that Mrs. Fisher was guilty of unbecoming conduct was the fact that she had overnight guests. But the presence of these guests in her home provides no inkling beyond subtle implication and innuendo which would impugn Mrs. Fisher's morality.[5] Idle speculation certainly does not provide a basis in fact for the board's conclusory inference that "there was strong potential of sex-

days of receipt of such notice a written request with the board of education for a hearing before the board. Upon receipt of such request the board shall order the hearing to be held within ten days, and shall give written notice of the time and place of the hearing to the teacher or administrator. At the hearing evidence shall be presented in support of the reasons given for considering termination or amendment of

the contract, and the teacher or administrator shall be permitted to produce evidence relating thereto.

5. Russell Kemp, a school board member, stated at the April 19th board hearing that he had heard conversation from "different places here in town" that men frequented Fisher's apartment. "Just about any place you wanted to ask, as far as that goes."

ual misconduct" and that, therefore, Mrs. Fisher's activity was "social misbehavior that is not conducive to the maintenance of the integrity of the public school system." We agree with the district court that "At most, the evidence may be said to raise a question of Mrs. Fisher's good judgment in her personal affairs, when measured against an undefined standard which someone could suppose exists in a small town in Nebraska." *Fisher, supra*, 346 F.Supp. at 398.

The record, furthermore, contains considerable evidence tending to negate any inference of improper or immoral conduct by Mrs. Fisher. She did not attempt to conceal the presence of her house guests but instead openly inquired of the school board's secretary about motel accommodations in Tryon for these guests. She was advised to keep them in her home because other accommodations were so limited. She formally introduced one of her guests at school so that he might observe classes to satisfy college requirements. The local Avon lady, wife of the pastor of a church in Tryon, called at Mrs. Fisher's residence on a Saturday morning during the 1970–1971 school year. Although Mrs. Fisher was apparently awakened by the visit, she invited the pastor's wife into her apartment. A young man who had been an overnight guest was also present in the apartment, and the three drank coffee together.

Two citizens of Tryon called as witnesses for the school board were subpoenaed. Their testimony cast no aspersions upon Mrs. Fisher's character or her fitness as a teacher. No evidence of a community reaction against Mrs. Fisher has been presented, *compare with James, supra*, 322 F.Supp. at 229 (student teacher denied student teaching assignment in circumstances of strong community reaction to published accounts of his radical activities), nor has she been shown incapable of maintaining discipline in her classes because of any

inferences of impropriety drawn by her students or their parents.[6]

This evidence, in the context of our review of the entire record, convinces us of the correctness of the district court's determination. The openness of the association, and the age differential between Mrs. Fisher and her guests, would seem to belie any inference of impropriety. The school board's inference of misconduct was arbitrary and capricious and therefore constituted an impermissible reason for terminating her employment, since the inference lacked any valid basis in fact.

Accordingly, we affirm the judgment of the district court.

---

6. The superintendent of schools testified that in observing Mrs. Fisher's classes, he had "always found them in good order."