**Norma SCHEELHAASE, Plaintiff-Appellee,**

v.

**WOODBURY CENTRAL COMMUNITY SCHOOL DISTRICT et al., Defendants-Appellants.**

**No. 73-1067.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1973.

Decided Nov. 28, 1973.

Rehearing and Rehearing En Banc Denied Jan. 30, 1974.

Lowell C. Kindig and Maurice B. Nieland, Sioux City, Iowa, for defendants-appellants.

Harry H. Smith, Sioux City, Iowa, for plaintiff-appellee.

Michael H. Gottesman, Washington, D. C., amicus.

Before GIBSON and BRIGHT, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

TALBOT SMITH, Senior District Judge.

The issue before us is one of Federal jurisdiction with respect to the continued employment of a non-tenured teacher under Iowa law. Her contract was not renewed by the Board of Education. She comes before us "invok[ing] the jurisdiction of this Court pursuant to Amendments I and XIV of the Constitution of the United States and 42 U.S.C. § 1983,"[1] asserting that her non-renewal "involves an issue of substantive due process."

The facts present a picture of internal and local dissension. On the one hand we have the (then) recently appointed Superintendent of the defendant district, Mr. Devine, and the defendant School Board. On the other we have a discharged teacher (the appellee herein), having had some ten years of school employment, and her supporters. The background of the situation illuminates the issues presented. Superintendent Devine is a relative newcomer to the district, though not to the teaching profession, having been teaching since 1937 and having been Superintendent in various Iowa schools since 1940.

When first interviewed, he testified, he was informed "that the scholastic program at the school had been criticized by the North Central Examining Committee and that they were on the unapproved list of the Iowa Department of Public Instruction and they were criticized by the North Central Associa-

---

* Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The trial court found jurisdiction of the parties and the subject matter under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The First Amendment claim has not been briefed to us and we were informed on oral argument that no claim thereunder is being asserted. The trial court based its determination on the Fourteenth Amendment.

tion." [2]  Under date of November 18, 1968, the Department of Public Instruction of the State of Iowa notified the school district that "you have one year from the date of Board action to correct the indicated deficiencies or be removed from the list of approved schools." [3] Upon Superintendent Devine's assumption of duties he took various remedial steps, unnecessary to record here. With respect to the appellee, Mrs. Scheelhaase, a tentative decision was reached not to renew her contract [4] and she was so informed, as well as of her statutory rights to a private and public hearing. These were held but, from her point of view, to no avail, for it was the ultimate decision of the Board that her contract not be renewed.[5] This action followed.

At the trial the appellee contended that she had been discharged solely because of the showing of her students in the tests given them, that such use of the tests "finds no support in educational policy," that, in addition, the appellants had failed to interpret the tests properly, and, moreover, that the tests actually showed her students to be making normal progress. Yet, notwith-

standing, her contract had not been renewed. For these reasons, she asserts, the appellants' failure to renew on the ground of allegedly low test scores "violated her Fourteenth Amendment rights."

The appellants, on the other hand, insisted that the tests in fact did reveal low scores for her pupils, that the tests had in fact been properly employed, and that "use of the ITBS scores as a measure of teacher competence stood as a reasonable and valid exercise of administrative discretion." In addition, appellants argue a lack of federal jurisdiction, in that appellee had no constitutionally protected right of renewal, the matter of renewal or nonrenewal of a teacher's contract being entrusted by the applicable state statutes to the discretion of the local Board.

It was the finding of the trial court that a teacher's professional competence could not be determined solely on the basis of her students' achievements on the ITBS (Iowa Test of Basic Skills) and ITED (Iowa Tests of Educational Development), such being the specific reason given for termination,[6] that appellee

---

2. App. 78.

3. Defendant's Ex. P., App. 165–168. By letter dated October 21, 1969, Superintendent Devine was notified that the school would be continued on the approved list, action having been taken "to correct the previously noted deficiencies" commending "you [Superintendent Devine] and your board of education for this response to meeting minimum standards."

4. Letter dated March 13, 1970 addressed to Mrs. Scheelhaase from Woodbury Central Community School District signed by W. D. Devine, Superintendent of Schools, states as follows:
   "The Woodbury Central School board is considering terminating your contract at the conclusion of the current 1969–70 school year.
   "Under section 279.13 of the Code of Iowa, you have the right to request a private conference with the board. This must be done within five days of the receipt of this notice. You may also request a written statement. In you [sic] case it will be the low scholastic accomplishment as indicated by Basic Skills and I.T.E.D. tests."

5. Letters dated April 8, 1970 and April 11, 1970, as follows:
   "This is official notification that your contract has been terminated effective at the end of the 1969–70 school year. This is in compliance with Section 279.139 the Code of Iowa. The complete board was in attendance and the vote was unanimous for termination." /s/ W. H. Devine.
   "In compliance with Section 279.13 of the Code of Iowa, the following reason is given for your contract termination.
   "Below average scholastic accomplishment of your students in the area of your responsibility. (Language Arts.)
   "Our records show that in letters sent to you on March 13 and March 23 the reason was given to you in writing. Our file copies show this fact." /s/ Lewis Foster.

6. Additional reasons for termination, namely, a rote following of text materials, lack of congenial relationship between teacher and pupil, and indications of poor preparation, were sought to be presented at the trial as further justifications but were rejected by the Court as not having been asserted in the administrative proceedings.

had a "property interest" in her contract of employment, and, "that the right to renewal thereof may not be denied without due process of law" which demanded that the reasons for termination "may not be arbitrary and capricious but must have a basis in fact." She was ordered reinstated and granted damages. D.C., 349 F.Supp. 988.

Thus the bare bones of the controversy. We will proceed directly to the basic issue before us, the jurisdiction of the Federal court upon these facts. Under Iowa law teachers do not enjoy tenure. Rather they are hired on a year to year basis. The pertinent statute provides that a teaching contract can extend only through the ensuing year and is subject to review on or before April 15th of each year. The appellee was thus put on notice that her contract, under Iowa Law, could not extend for a longer period than the ensuing school year, but that it would be automatically renewed unless the Board of Education decided to terminate. In such event, the statute provides, she is entitled to a private and a public hearing, both of which were had in this case.[7] (Discharge for cause at any time during the school year is covered by another statute, Sec. 279.24, 1971 Code of Iowa. The matter before us is a nonrenewal situation, not a discharge for cause.)

The reason for the one-year limitation expressed in the teacher-contract statute

was made clear in the case of Miner v. Lovilia Independent School District, 212 Iowa 973, 234 N.W. 817 (1931) wherein the court examined the contract and held as follows:

It will be noted that this section is affirmatively mandatory rather than prohibitive. It requires that the contract whatever it be, shall be in writing. It specifies certain subjects to be covered therein. It imposes no disability upon the contracting parties except that the term of service shall not exceed one year. Subject to this single disability, the right of contract, as between contracting parties, is in no manner abridged.

\* \* \* \* \* \*

It is argued that this statute was enacted for the protection of the teacher. There is quite as much reason for saying that it was enacted primarily for protecting the school district. Prior to the enactment of this particular feature of the statute, there existed in many parts of the state quite a notorious and nefarious practice on the part of outgoing school boards whereby teachers selected by the outgoing board were employed for a term of years and this was done for the purpose of circumventing the incoming school board in their legitimate selection of teachers during the terms of their own incumbency. The single disability contained in this sec-

---

7. "Contracts with teachers must be in writing, and shall state \* \* \* such other matters as may be agreed upon, which may include employment for a term not exceeding the ensuing school year \* \* \*. Said contract shall remain in force and effect for the period stated in the contract and thereafter shall be automatically continued in force and effect for equivalent periods, \* \* \* until terminated as hereinafter provided \* \* \*. On or before April 15th of each year, the teacher may file his written resignation \* \* \* or the board may by majority vote of the elected membership of the board, cause said contract to be terminated by written notification of termination \* \* \* provided, however, that at least ten days prior to mailing of any notice of termination, the board \* \* \* shall inform the teacher in writing (1) the Board is considering termination of said contract and that (2) the teacher shall have the right to a private conference with the board if the teacher files a request therefor \* \* \*. The teacher shall have the right to protest the action of the board and to a hearing thereon \* \* \* in which event the board shall hold a public hearing on such protest \* \* \*. Upon the conclusion of the hearing, the Board shall determine the question of continuance or discontinuance of the contract by a roll call vote \* \* \*. The foregoing provisions for termination shall not affect the power of the board of directors to discharge a teacher for cause under the provisions of Sec. 279.24 \* \* \*" Sec. 279.13, 1971 Code of Iowa.

tion was effective to stop such practice. In all other respects the contents of the contract are to be determined in writing by the mutual agreement of the contracting parties * * *.

As to Section 279.24, the discharge for cause section, the Court held that:

* * * we find that it provides the method of discharging a teacher for cause. This statute is applicable to every case of teacher's employment even though the teacher had not consented thereto in his contract.

These two sections must be read together. Neither of them should be strained or emphasized to the impairment of any provision of the other. Nor should either of them be interpreted as to eliminate any of its own provisions. (234 N.W. at 819.)

The case of Driver v. Independent School District of Sioux City, 224 Iowa 393, 276 N.W. 37 (1937) is also significant in a consideration of the law of Iowa respecting the powers of the Board in the employment of teachers. Here a discharged teacher brought a mandamus action to compel the district to re-employ her as a teacher. With respect to the issue before us the Court held:

The trial court was correct in holding that the matter of employment of teachers lies wholly within the discretionary power vested in the board of directors. This conclusion is borne out of the following authorities: Section 12441, Code, 1935; 38 C.J. pages 689, 691, 695; Neilan v. Board of Directors, 200 Iowa 860, 205 N.W. 506; Drew v. School District, 146 Iowa 721, 125 N.W. 815 * * *. (276 N.W. at 39.)

It is clear from the cases quoted and cited that the function of the Board of Education under the applicable law of Iowa is to further the best interests of that segment of the state's educational system entrusted to its care, Neilan v. Board of Directors of Independent School District of Sioux City, supra, including within such function the employment of teachers, Driver v. Independent School District of Sioux City, supra. In the performance of its duties the Board is empowered to act in accordance with its best discretion. It is possible that the discretion of a Board may, at times, to those more generously endowed, seem to have been exercised with a lack of wisdom. But the Board's decisions in the exercise of its discretion are not vulnerable to our correction merely if they are "wrong", sustainable only if they are "right". As the Iowa court put it in Rehmann v. City of Des Moines, 204 Iowa 798, 215 N.W. 957 (1927):

They may judge wrongly, and so may a court or other tribunal, but the party complaining can have no action when the officers act in good faith and in the line of what they think is honestly their duty. (215 N.W. at 960.)

But the thrust of appellee's argument goes beyond mere error in the exercise of discretion. It is alleged (and was found) to be action so unwarranted in the premises as to be arbitrary and capricious, an abuse of the Board's discretion. And thus it is, against this background of charges, hearings, administrative action, and trial rulings that we reach the question of our jurisdiction in the premises.

The question is not new to us and we need not reexamine in detail. In Freeman v. Gould Special School District of Lincoln County, Ark., 405 F.2d 1153 (8th Cir. 1969), we considered the case of six school teachers whose contracts were not renewed at their termination. In Arkansas, as in Iowa, the law does not provide for a tenure system, but rather teachers are employed on an annual contract with automatic renewal unless written notice to the contrary is given within a prescribed time. The Arkansas law did not (unlike Iowa) provide for a hearing, although one was given. It was the claim of the teachers that the Board's decision not to rehire them, on the basis of a recommendation by the principal, was arbitrary, capri-

cious, and unreasonable, thereby violating the due process and equal protection clauses of the Fourteenth Amendment. We held not. It was our holding (q.v.) that in the absence of a tenure statute a local school board has the right to decline to employ or to re-employ any teacher for any reason or for no reason as long as such a decision is not violative of a specific constitutional right. As we there said:

> Almost all of the cases cited in support of plaintiffs' [teachers'] position are concerned with either racial discrimination or an invasion of a constitutionally protected right or privilege by way of a statute or regulation. We agree that the teachers are protected under the Equal Protection Clause from discrimination on account of race or religion or in their assertion of constitutionally protected rights, but no case cited by plaintiffs had gone so far as to say that all actions of any government board or agency in employment cases must accord the individual due process under the Fourteenth Amendment so as to provide tenure and a right to retain the position, except for cause. And "for cause" presupposes a right to hearing, notice, and appeal. Many government employees are under civil service and some under tenure. Absent these security provisions a public employee has no right to continued public employment, except insofar as he may not be dismissed or failed to be rehired for impermissible constitutional reasons, such as race, religion, or the assertion of rights guaranteed by law or the Constitution. (405 F. 2d at 1159.)

The holding is equally applicable here. Stripped to its essentials the appellee's argument, as she puts it, is that "failing to renew a teacher's contract for a reason lacking basis in fact [the results of the tests given] stands especially repulsive to due process fairness where, as here, the teacher enjoys a legitimate expectation of re-employment." It would follow that appellee's years of service with the school district vested in her such a "property" in her job that the theretofore unlimited discretion of the School Board no longer obtained, she being thus invested, as we noted in *Freeman,* with a tenure status, despite the contrary wording of the statute.

But appellee argues that as applied to her situation the authority of *Freeman* is eroded by our later case of Fisher v. Snyder, 476 F.2d 375 (8th Cir. 1973). We do not so regard it. *Fisher* involved the situation of a female teacher who was discharged on specious and unwarranted grounds of sexual misconduct. We affirmed the district court's finding that although a school board may legitimately inquire into the character and integrity of its teachers, it may not arbitrarily and capriciously discharge a teacher based on unsupported conclusions drawn from such inquiries, in view of the defamatory nature of the charges made. The principle here involved is not to be pushed beyond its narrow parameters upon the theory that any dismissal, particularly for a degree of incompetence, may to some degree impair professional standing. It may, or it may not, depending on the circumstances, but whether or not, what we ruled upon in *Fisher* was essentially a charge of immorality, a slanderous assault upon moral rectitude, not simply an alleged impairment of professional standing by reason of discharge. This it is clear, does not invoke the *Fisher* doctrine.[8]

---

8. *Cf.* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) wherein the Court differentiated two situations: One, in which a State, in declining to rehire a teacher, made no charge against him "that might seriously damage his standing and associations in his community," the other where the nonrenewal is based "on a charge, for example, that he had been guilty of dishonesty or immorality." In that situation, commented the Court, "this would be a different case." 408 U.S. at 573, 92 S.Ct. at 2707.

Finally, we are constrained to observe, in view of the multiplicity of "civil rights" actions now being brought into the Federal courts on non-racial, non-specific constitutional grounds, that

> Not every civil right is a right derived or secured by the Constitution or laws of the United States * * *. Only those rights, privileges and immunities that are secured by the Constitution of the United States or some Act of Congress are within the protection of the federal courts. Rights, privileges and immunities not derived from the federal Constitution or secured thereby are left exclusively to the protection of the states. [1 Barron & Holtzoff, Federal Practice and Procedure, § 37.]

Significant, also, not only with respect to the above *caveat,* but as well with respect to the many cases involving the discharge of teachers now coming before the Federal courts as civil rights actions,[9] are the concurring observations of Chief Justice Burger in Board of Regents v. Roth, *supra,* and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972):

> I concur in the Court's judgments and opinions in *Perry* and *Roth* but there is one central point in both decisions that I would like to underscore since it may have been obscured in the comprehensive discussion of the cases. That point is that the relationship between a state institution and one of its teachers is essentially a matter of state concern and state law. The Court holds today only that a state-employed teacher who has a right to re-employment under state law, arising from either an express or implied

contract, has, in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administrative or academic hearing on the cause for nonrenewal of his contract. Thus, whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law. The Court's opinion makes this point very sharply:

> 'Property interests * * * are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law * * *.' Board of Regents v. Roth, *ante,* 408 U.S. at 577, 92 S.Ct. 270.

Because the availability of the Fourteenth Amendment right to a prior administrative hearing turns in each case on a question of state law, the issue of abstention will arise in future cases contesting whether a particular teacher is entitled to a hearing prior to nonrenewal of his contract. If relevant state contract law is unclear, a federal court should, in my view, abstain from deciding whether he is constitutionally entitled to a prior hearing, and the teacher should be left to resort to state courts on the questions arising under state law.

■ We need not pass upon the nature of the interest of the teacher required that she may demand as of right a hearing upon her termination, Perry v. Sindermann, *supra,*[10] for here the governing statute provided for a hearing, which she had. It is our holding that the administration of the internal affairs of the school district before us

---

9. Brief of amicus National Education Association cites to us some eighty cases in this and related areas. See, also, comprehensive review of cases in Freeman v. Gould, *supra,* and Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), and cases therein cited. Law review studies, written prior to *Board of Regents,* and *Perry, supra,* are numerous, the leading articles and comments, with discussions of principles involved will be found in recent

comments in 49 N.C.L.Rev. 302 (1971), 19 U.C.L.A.L.Rev. 1052 (1972) and 44 N.Y.U. L.Rev. 836 (1969).

10. "Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency." 408 U.S. at 603, 92 S.Ct. at 2700.

has not passed by judicial fiat from the local board, where it was lodged by statute, to the Federal court. Such matters as the competence of teachers, and the standards of its measurement are not, without more, matters of constitutional dimensions. They are peculiarly appropriate to state and local administration.

■ In this case we find no violation of appellee's civil rights, nor a Federal due process issue. In short, as we held in Harnett v. Ulett, 466 F.2d 113 (8th Cir. 1972), citing Freeman v. Gould, *supra,*

Roth [supra] and *Sindermann* [supra] adhere to the principle that absent contractual, legislative or constitutional provision on the subject, the power of removal is incident to the power of appointment, and government employment can be revoked at the will of the appointing officer. [466 F.2d at 117.]

In the view we have taken of the case we do not rule upon the additional issues presented.

The decision of the District Court is reversed and the case is remanded with instructions to dismiss the complaint.

BRIGHT, Circuit Judge, concurring.

My concurrence is limited to the result. In light of our recent decisions in Strickland v. Inlow, 485 F.2d 186 (8th Cir., filed Aug. 29, 1973) and Fisher v. Snyder, 476 F.2d 375 (8th Cir. 1973), I think it is fair to say that the concept of substantive due process is not wholly alien to the administration of public schools.

We need not spell out the dimensions or limitations of that doctrine here, for I am satisfied on this record that appellee has not shown the action of the Board to have been arbitrary and capricious.

The record in this case shows that Superintendent W. B. Devine came to the Woodbury school system prior to the 1969–1970 school year. He testified as to his efforts to upgrade the school system. In February, he visited appellee's English class and observed her teaching methods and her classroom relationship with students. Following this visitation he advised appellee that her work was unsatisfactory.

On March 13, 1970, he wrote Mrs. Scheelhaase:

The Woodbury Central School board is considering terminating your contract at the conclusion of the current 1969–70 school year.

Under Section 279.13 of the Code of Iowa, you have the right to request a private conference with the board. This must be done within five days of the receipt of this notice. You may also request a written statement. In you [sic] case it will be the low scholastic accomplishment as indicated by Basic Skills and I.T.E.D. tests.

The notice of termination given by the Board reiterated:

In compliance with Section 279.13 of the Code of Iowa, the following reason is given for your contract termination.

Below average scholastic accomplishment of your students in the area of your responsibility. (Language Arts)

At the trial, Superintendent Devine testified that he had recommended that the Board not renew her contract because her students displayed low scholastic performance in the language arts area and that one of the indications of this low achievement was the current Basic Skills tests. Mrs. Scheelhaase's witnesses all testified that it was improper to use these test scores as a basis for evaluating a teacher's performance. The district court specifically found in this regard:

4. The specific reason given plaintiff for termination was her professional incompetence as indicated by the low scholastic accomplishment of her students on the Iowa Tests of Basic Skills (ITBS) and Iowa Tests of Educational Development (ITED) [footnote omitted].

5. A teacher's professional competence cannot be determined solely on the basis of her students' achievement on the ITBS and ITED, especially where the students maintain normal educational growth rates.

But neither the testimony of appellee's experts in the educational field nor the trial court's finding suffices to establish the actions of the Board or Superintendent Devine as arbitrary and capricious.

Appellant-Devine possesses a Masters Degree in his field and has attained credit toward a Ph.D. degree. He has served as a teacher and a superintendent of schools for more than 14 years. In his work he has made a study of the Iowa Tests of Basic Skills and of Educational Developments. Without dispute, Mrs. Scheelhaase's students disclosed below-average accomplishment in her subjects. The superintendent, in concluding on his experience that these test results reflected adversely upon the teaching competence of Mrs. Scheelhaase, may have been erroneous but the conclusion was not an unreasoned one, and that is the test.

The Board was entitled to rely upon the recommendation and conclusions of its Superintendent, notwithstanding the existence of strong opinions contrary to his regarding the use of the ITBS or ITED tests as a tool for teacher evaluation. Given a choice between experts, the Board was entitled to rely upon its own. In this case, the district court found that, "[a] teacher's professional competence cannot be determined solely on the basis of her students' achievement on the ITBS and ITED, especially where the students maintain normal educational growth rates." We have no disagreement with such a statement. But in the Woodbury School District, based upon his education and training, the Superintendent arrived at a contrary determination relating to students in Mrs. Scheelhaase's class. Thus its decision, even though premised upon an apparently erroneous "expert opinion," cannot be faulted as arbitrary and capricious. The Board's mere mistake in judgment or in weighing the evidence does not demonstrate any violation of substantive due process.

The Superintendent and the Board for the Woodbury, Iowa, Central Community School District possessed the right and responsibility of evaluating its teacher personnel, and such evaluations, where they are based on some evidence, even though possibly erroneous, will not serve to make those determinations subject to judicial review as unconstitutionally arbitrary and capricious.