**Eskel NORBECK, Appellant,**

v.

**DAVENPORT COMMUNITY SCHOOL DISTRICT et al., Appellees.**

**No. 75–1613.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1976.

Decided Nov. 29, 1976.

Rehearing and Rehearing En Banc Denied Dec. 28, 1976.

John R. Hearn, Des Moines, Iowa, for appellant.

Charles E. Miller, Davenport, Iowa, for appellees; Robert V. P. Waterman, Lane & Waterman, Davenport, Iowa, on the brief.

Before GIBSON, Chief Judge, and LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

The Board of Directors of the Davenport Community School District did not renew the contract of Eskel Norbeck, the principal of Central High School for the 1972–73 school year. Norbeck brought suit against the board members [1] and the school district under 42 U.S.C. § 1983, claiming that the nonrenewal of his contract (1) was illegally based upon the exercise of his constitutional right to act as chief negotiator for the Davenport Education Association, and (2) constituted a denial of procedural due process. Jurisdiction over the federal claims was asserted under 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Norbeck also asserted a claim for breach of contract, and the board's failure to conform with the procedural requirements of Iowa Code § 279.13 (1971).

The district court dismissed all claims except the one brought under § 1983, alleging a violation of his right of association. In addition the district court dismissed all the defendants, except the four board members who had voted not to renew his contract. After a 10-day trial the jury returned a verdict in favor of the four board members.

On appeal Norbeck challenges the jury instructions and the district court's pre-trial rulings. He asserts that the district court erred in instructing the jury concerning his First Amendment rights, the immunity of the board members and punitive damages. In addition he claims that the district court should not have dismissed: (1) the school district as a party to Count I, since he had alleged jurisdiction under 28 U.S.C. § 1331; (2) his breach of contract claim (Count II); (3) his claim based upon denial of procedural due process (Count III); and (4) his claim for a violation of Iowa Code § 279.13 (1971)

---

1. Norbeck named, as individual defendants, the seven board members at the time of the nonrenewal. Of these seven, four members had vot-ed not to renew his contract: H. H. West, Jack Smit, Dale Paustian and Lafayette Twynner.

(Count III). He also asserts that the district court erred in refusing to allow him to amend his complaint to include a charge of conspiracy under 42 U.S.C. §§ 1985 and 1986.[2] We affirm the order of the district court dismissing the complaint as to all defendants and the entry of the judgment on the jury verdict in favor of the individual board members.

I

Eskel Norbeck was hired as principal by the Davenport Community School District in 1968. At that time he joined the local teachers' association, the Davenport Education Association (hereinafter DEA). In 1971 the DEA elected Norbeck to serve as the chief negotiator for the teachers in their negotiations with the school district. During the 1971–72 school year the DEA and the school district were governed by a contract entitled "Professional Communication Agreement" (PCA). The PCA recognized the DEA as the representative of all certified personnel of the school district except the superintendent and his executive directors. Thus school principals and other supervisory personnel were included in the bargaining unit. The PCA also provided that the board would not "discriminate" against any teacher for his DEA membership or participation in DEA activities. The PCA was ratified by the board and the DEA, and became effective on July 1, 1971, and was to continue in effect until June 30, 1972. Norbeck's 1971–72 teaching contract was for the same time period.

Negotiation over a new PCA was commenced on January 17, 1972, and subsequent negotiating sessions were held on January 31, February 7, and February 14. The discussions centered on the school board's proposal to exclude all supervisory personnel, including principals, from the bargaining unit represented by the DEA.

The evening of February 14, after the negotiation session, the board met in executive session to consider whether to renew Norbeck's teaching contract. At this session the board members discussed Norbeck's teacher evaluations, discipline at Central High School, his administrative skills, his poise and tact, and his role as a negotiator for the DEA. The board voted voted 6 to 1 to have Harold Kaiser, the superintendent, inform Norbeck of their intention not to renew his contract.

After being informed of the board's decision and requesting reasons therefor, Norbeck received a letter dated March 29, 1972, containing the four reasons for nonrenewal. The reasons given were: (1) unsatisfactory performance; (2) poor judgment; (3) inability to maintain discipline; and (4) inability to relate to parents and follow through on student problems.

On April 28, 1972, Norbeck, by letter to the board, requested a public hearing, and a written copy of the specific examples of incidents relating to his management of the school. On May 10, 1972, Kaiser responded to Norbeck's request for the specific examples of reasons for nonrenewal. The letter, in part, provided:

You have heretofore been provided with the four reasons why the School Board considered termination of your contract. At the private hearing held with you on April 8, 1972, individual examples of matters relating to your management of Central High School were discussed. These include:

1. Your handling of the 1971 Homecoming Queen Election.

2. Your failure to make recommendations concerning the 1971 readmission of a former Central High School student.

3. Your handling of the proposal to keep seniors in school for final evaluation at the close of the 1970 year.

2. Before trial Norbeck attempted to amend his complaint to allege a conspiracy under 42 U.S.C. §§ 1985 and 1986 against the four board members who voted not to renew his contract. The district court refused to allow the amend-ment, stating that there was no allegation that the defendants' conduct denied Norbeck equal protection of the laws, or that their conduct was motivated by racial or other class based animus.

4. Your handling of budget and physical plant and maintenance proposals to the Administration.

5. Your efforts to seek additional employment.

6. *Conflict of interest resulting from your acting as chief negotiator for the D.E.A.*

7. Evaluation of teachers under your jurisdiction.

8. Problems concerning maintenance of reasonable order and discipline in the school.

(Emphasis added).

A public hearing was held on May 15, 1972. Dale Paustian, the board president, summarized the four reasons contained in Kaiser's letter of March 29, 1972. He then proceeded to discuss numerous instances supporting these reasons. One of the examples of poor judgment cited by Paustian was Norbeck's role as negotiator for the DEA.[3] At the close of the meeting, board members voted 4 to 3 not to renew Norbeck's contract for the ensuing school year.

## II

At trial the district court denied the defendants' motion for a directed verdict, and submitted to the jury the issue of whether Norbeck, in acting as chief negotiator for the DEA, was exercising his constitutionally protected right of association. Since we find that the district court should have directed a verdict in favor of the defendants, it is not necessary to discuss the alleged errors in the jury instructions, or the propriety of the dismissal of the school district as a party defendant.

Norbeck's complaint is that in retaliation for the exercise of his First Amendment right to serve as the chief negotiator for the DEA, his contract was not renewed. He asserts that the nonrenewal or termination of a nontenured public school teacher's contract may not be predicated on the exercise of the teacher's constitutional rights. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); and *Scheelhaase v. Woodbury Central Comm. School Dist.,* 488 F.2d 237 (8th Cir. 1973).

Assuming, *arguendo,* that Norbeck's contract was not renewed for reasons which included his role as chief negotiator for the DEA, we view the fundamental question to be whether a school board may constitutionally consider, in evaluating the job performance of a school principal, his participation in bargaining sessions with the school board as chief negotiator for a teachers' association.

Norbeck, as principal of Central High School, was the chief administrator for that facility, and was responsible for its physical structure, educational program, staff and students. His discretion in fulfilling these responsibilities was subject to the policy guidelines of the school board, as administered by the superintendent and his staff. The evidence demonstrated that one of his primary responsibilities was the supervision, evaluation and coordination of the work of

---

**3.** Mr. Paustian stated:

Perhaps the most extraordinary example of Mr. Norbeck's failures in judgment relates to his position with the Davenport Education Association, which includes principals, supervisors and teachers. Mr. Norbeck is paid a substantial sum of money each year to manage Central High School. *He has a legal and moral duty of allegiance to the Board and to the administration; in fact, he is a part of management.* Nevertheless, he has seen fit to accept the position of chief negotiator for the Davenport Education Association, in its bargaining negotiations on behalf

of the teachers. Mr. Norbeck has thus placed himself in a direct conflict of interest situation. He cannot properly represent management and at the same time represent the teachers who are bargaining collectively in opposition to management.

I do not believe that this conflict of interest situation is merely theoretical and has no practical consequences. *Consider for example the pressures or temptations that must necessarily influence any administrator in his job of evaluating the performance of teachers whom he also represents.*

(Emphasis added).

the teaching staff. As principal, Norbeck worked closely with the school district's director of personnel in the hiring of teachers for Central High School. It was also his duty to evaluate a teacher's performance, and report his findings to the superintendent, so that in case of a deficiency, a proper solution, including disciplinary action, could be found. Also, as principal, Norbeck was the primary administrator at stage one for any teacher grievance.

In asserting his constitutional claim, Norbeck relies in part on the provision of the 1971–72 master agreement (the PCA) with the DEA, which provided that the board would not "discriminate" against teachers for their DEA activities. Assuming that Norbeck had a contractual right to become a member of the DEA, and serve as its chief negotiator, this alone does not create a constitutional right. We must determine whether under the factual setting of the case, Norbeck enjoyed a constitutional right to act as chief negotiator for the DEA.

■ Freedom of association is a "basic constitutional freedom" that is " 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.' " *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976). The right of association encompasses private and public employees' union membership. *See Perry v. Sindermann, supra; Keyishian v. Board of Regents, supra; Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *American Fed. of State, County & Municipal Emp. v. Woodward,* 406 F.2d 137 (8th Cir. 1969); *Confederation of Police v. Chicago,* 382 F.Supp. 624 (N.D.Ill.1974); and *Teamsters Local 594 v. West Point,* 338 F.Supp. 927 (D.Neb. 1972). Teachers and other public school employees are no different than other public employees, and have a constitutional right to join a union. *McLaughlin v. Tilendis,* 398 F.2d 287 (7th Cir. 1968); and *Local 858, AFT v. School Dist. No. 1,* 314 F.Supp. 1069 (D.Col.1970).

■ However, the right to associate, like freedom of speech, is not absolute. *See United States Civil Service Comm'n v. Na-* tional Ass'n of Letter Carriers, 413 U.S. 548, 567, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Even a significant interference with an individual's freedom of association may be sustained if there exists a sufficiently important state interest, and the means employed are narrowly drawn to avoid unnecessary abridgement of associational freedoms. *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975); *Shelton v. Tucker, supra;* and *NAACP v. Alabama,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

In an educational context the courts have balanced a teacher's right of association against a state's interest in the "orderly administration of a school system," *Whitsel v. Southeast Local Sch. Dist.,* 484 F.2d 1222, 1229 (6th Cir. 1973), and the maintenance of a "properly moral and scholastic environment." *Sullivan v. Meade Indep. Sch. Dist. No. 101,* 530 F.2d 799, 804 (8th Cir. 1976). The Supreme Court, in discussing a teacher's right of free expression, has stated that a state has an interest "in promoting efficiency of the public services" which includes maintenance of "discipline by immediate superiors" and "harmony among coworkers" and the preservation of those "relationships . . . [which require] personal loyalty and confidence . . . [for] proper functioning." *Pickering v. Board of Education, supra* 391 U.S. at 568 and 570, 88 S.Ct. at 1735. *Cf. Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) (nonpolicy making, nonconfidential government employee cannot be discharged because of political beliefs and associations).

■ We conclude, under the existing factual circumstances, that the interest asserted by the school board in efficient school administration is paramount to the right of a school principal to collectively bargain for classroom teachers who he was hired to supervise, discipline and evaluate. A school board is properly concerned over conflicts relating to the maintenance of discipline and co-worker harmony. More importantly, the board members were properly concerned with whether the close working relationship among a principal, superintendent

and school board was threatened by Norbeck's role as chief negotiator for the DEA.

The exclusion of supervisory personnel from collective bargaining rights enjoyed by other employees is not new in the law as "[m]anagement, like labor, must have faithful agents." *Beasley v. Good Fair of North Carolina, Inc.*, 416 U.S. 653, 660, 94 S.Ct. 2023, 2027, 40 L.Ed.2d 443 (1974). This concept was embodied in the Taft-Hartley Act, which amended the National Labor Relations Act to exclude supervisors from the Act's protections, thus freeing employers to discharge supervisors without violating the Act's restraints against discharges on account of labor union membership. *See Beasley, supra* at 654–55, 94 S.Ct. 2023; 29 U.S.C. §§ 152(2), 152(11) and 164(a).

In *Elk Grove Firefighters Local 2340 v. Willis*, 400 F.Supp. 1097 (N.D.Ill.1975), *aff'd*, unpublished order 539 F.2d 714 (7th Cir. 1976), the court held that the state's interest in an efficient fire department was sufficient to warrant the prohibition of fire department captains and lieutenants from joining a union which consisted of rank and file firefighters who the officers were hired to supervise, discipline and evaluate. *See also Shelofsky v. Helsby*, 32 N.Y.2d 54, 343 N.Y.S.2d 98, 295 N.E.2d 774, *appeal dismissed*, 414 U.S. 804, 94 S.Ct. 60, 38 L.Ed.2d 41 (1973).

Applying these principles, we conclude that the school district's interest in the maintenance of an efficient school administration was sufficient to justify the nonrenewal of Norbeck's contract. The evidence demonstrated that Norbeck actively participated, in collective bargaining with his employers, for an association of teachers who he was hired to supervise, evaluate and discipline. The majority of the board considered this conduct evidence of "poor judgment." The nonrenewal was not overly broad, as it did not prohibit Norbeck from joining any union, particularly one of his peers. Whether Norbeck was lawfully exercising a constitutional right was a question for the court and not for the jury. We find, even assuming the truth of Norbeck's contention, that the evidence failed to show

any infringement of a constitutional right and should not have been submitted to the jury as a possible basis of recovery under § 1983.

### III

As to the remaining contentions, we hold that the district court properly dismissed Counts II and III, and properly disallowed Norbeck's proposed amendments alleging a conspiracy under 42 U.S.C. §§ 1985 and 1986.

■ In Count II Norbeck alleged that the defendant's nonrenewal of his contract violated the anti-discrimination clause of the 1971–72 PCA, which was incorporated by reference into his teaching contract for the 1971–72 school year. Norbeck contends that the school board, under the PCA, had agreed to allow him membership and participation in the DEA during his contract term. This may be true, however, this agreement did not prevent the board from making a subjective evaluation that Norbeck had exercised bad judgment by acting as chief negotiator for the teachers. In dismissing Count II the district court held that the undisputed facts revealed a nonrenewal of his contract for the ensuing school year and not a discharge during the contract period. We agree.

Under Iowa law, the terms of Norbeck's contract and the PCA, the board was under no affirmative obligation to renew Norbeck's contract. Norbeck's contract as well as the master agreement were subject to negotiation on a yearly basis. Norbeck's rights under his existing contract were not terminated during the term of the contract.

For these reasons we sustain the dismissal of the claims under Count II and therefore do not pass on the jurisdictional question raised.

■ The substance of Norbeck's allegation in Count III, asserting a denial of procedural due process requirements under the Fourteenth Amendment and Iowa Code § 279.13, was that the board was not an impartial tribunal. As a prerequisite to an assertion of a due process right, a nonten-

ured teacher must demonstrate an infringement upon a "liberty" interest.[4]

■ Norbeck alleges a denial of such an interest in the board's charge of a "conflict of interest" and asserts that this is tantamount to a claim of dishonesty, casting a stigma upon him. *See Board of Regents v. Roth,* 408 U.S. 564, 574–75, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In determining whether a charge of conflict of interest is similar to a charge of dishonesty, the courts must examine the "characterizations of [Norbeck's] behavior . . . in context." *Adams v. Walker,* 492 F.2d 1003, 1007 (7th Cir. 1974); *Jeffries v. Turkey Run Consolidated Sch. Dist.,* 492 F.2d 1 (7th Cir. 1974). In the context of this case, an examination of the board's charge of "conflict of interest" reveals that, at best, the statement amounts to a charge of poor judgment and not dishonesty. Thus the charge is basically equivalent to a statement alleging that Norbeck's conduct failed to meet professional standards. Such a statement does not impinge upon a liberty interest. *See Abeyta v. Taos,* 499 F.2d 323 (10th Cir. 1974) (improper job performance); *Blair v. Board of Regents,* 496 F.2d 322 (6th Cir. 1974) (failure to meet minimum standards); *Adams v. Walker, supra* (charges of incompetence, neglect and malfeasance). In *Scheelhaase, supra* at 244, we stated that the competencies of teachers are not matters of constitutional dimensions, but are peculiarly appropriate to state and local administration.

■ However, assuming, *arguendo,* that Norbeck was deprived of a "liberty" interest, we find that he was *not* denied due process. In *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Education Ass'n,* 426 U.S. 482, 96 S.Ct. 2308, 2315, 49 L.Ed.2d 1 (1976), the Supreme Court stated that a determination of what process is due re-

quires the consideration of the individual's interest in the decision, as well as the state's interest in a particular procedure for making it. In *Hortonville* contract negotiations between the school board and the teachers' association reached impasse. The teachers then went on strike, which was illegal under Wisconsin law. The school board, after notice and hearing, terminated all the striking teachers. The teachers complained that the board, because it had participated in the negotiations, was not sufficiently impartial to exercise discipline over the striking teachers. Under state law the school board was the only entity empowered to hire or fire the teachers. The court held:

> A showing that the Board was "involved" in the events proceeding this decision, *in light of the important interest in leaving with the Board the power given by the state legislature,* is not enough to overcome the presumption of honesty and integrity in policymakers with decision making power.

*Id.* at 2316 (emphasis added).

We find *Hortonville* dispositive of the constitutional and statutory issues before us.[5] First, the board, under Iowa law, was the only body empowered to renew, or not renew, teachers' contracts. Second, Norbeck's allegation that one of the board members tried to influence a member of the Black community to testify against him at the public hearing states no greater "involvement" than was present in *Hortonville.* We conclude, in light of the significant role in maintaining integrity and efficiency in school administration given the board by the Iowa legislature, that the allegation here is not of sufficient substance to overcome the presumption of honesty and integrity that clothes decision makers.

Lastly, we turn to Norbeck's assertion of a conspiracy to deny him equal protection

---

4. Iowa Code § 279.13 does not confer tenure or create an expectation of continued employment. *Brouillette v. Board of Directors,* 519 F.2d 126 (8th Cir. 1975); *Scheelhaase v. Woodbury Central Comm. Sch. Dist.,* 488 F.2d 237 (8th Cir. 1973).

5. In the absence of specific rules, regulations, or further definition by the Iowa Supreme Court, this court has interpreted § 279.13 as a legislative basis to provide nontenured teachers with procedural due process. *Brouillette v. Board of Directors,* 519 F.2d 126 (8th Cir. 1975).

of law under 42 U.S.C. §§ 1985 and 1986. In his fourth amendment Norbeck attempted to amend Counts I, II and III to allege a conspiracy under §§ 1985 and 1986. The district court denied leave to amend Counts II and III, but allowed Norbeck to amend Count I. The defendants then moved to dismiss the claim under Count I. Norbeck proffered his fifth and sixth amendments which attempted to amplify his conspiracy allegations. The district court denied Norbeck's sixth application to amend and dismissed his conspiracy allegation in Count I on the ground that there was no serious allegation that the defendants denied Norbeck equal protection of the law, or that their conduct was motivated by racial or some other class based animus.

■ Fed.R.Civ.P. 15(a) specifically provides that permission to amend "shall be freely given when justice so requires," but the standard of review by the court of appeals is whether the district court abused its discretion. *See Reserve Mining Co. v. EPA,* 514 F.2d 492 (8th Cir. 1975); *Zatina v. Greyhound Lines, Inc.,* 442 F.2d 238 (8th Cir. 1971). The district court had previously granted summary judgment for the defendants on Count III, and dismissed Count II for failure to state a claim upon which relief could be granted. We find that the district court did not abuse its discretion in denying plaintiff the right to amend Counts II and III, as the conspiracy allegation did not remedy the deficiencies of Counts II and III.

■ The only issue remaining relates to the district court's dismissal of Norbeck's conspiracy amendment of Count I. Assuming that the defendants discriminated against Norbeck because they allowed classroom teachers to join the DEA and denied supervisory personnel (including principals) that right, we find, for the reasons previously discussed, that this is a reasonable classification justified by a state's compelling interest in maintaining close working relationships with its supervisory personnel. Thus, no invidious discrimination exists.[6] Since we find that Norbeck has not properly pled a claim for conspiracy under § 1985, he cannot maintain an action under § 1986 for failure to prevent a conspiracy actionable under § 1895.

Judgment in favor of each of the defendants is affirmed.

BRIGHT, Circuit Judge (concurring):

I agree with the majority's conclusion that a school district may, on pain of nonrenewal of the principal's employment contract, forbid a high school principal from serving as chief negotiator for a labor organization representing the interests of teachers whom the principal is obligated to evaluate and supervise on behalf of the school board without violating the principal's first amendment right. What gives me concern here is that appellant Norbeck, for all that appears in the record, did not hear of the school district's objection on conflict of interest grounds until the nonrenewal of Norbeck's contract. I am not at all certain that a school district may acquiesce in a principal's serving as a union negotiator and then fail to renew his contract because of it. However, Norbeck has not precisely raised this issue on appeal and we do not reach it.

Accordingly, I concur in the result.

---

**6.** In addition, our review of the pleadings shows that Norbeck has failed to allege, with any degree of particularity, some overt act committed by the defendants in furtherance of a conspiracy. Taken as a whole, the allegations in the complaint indicate little more than the meeting of board members to consider and discuss the renewal of Norbeck's contract. If allegations of this type were sufficient to allege a conspiracy, then every state administrative action could be made the subject of a civil rights action under § 1985(3). *See Powell v. Workmen's Comp. Board,* 327 F.2d 131 (2d Cir. 1964).