James STRAYER, Plaintiff,

v.

REMSEN–UNION COMMUNITY SCHOOL, Darrell Schroeder, Daryl Gengler, Donald Delperdang, Ed Dempster and Cyril Schmit, the Board of Directors of the Remsen-Union Community School District, in their official and individual capacities, Defendants.

No. C 87–4122.

United States District Court, N.D. Iowa, W.D.

Aug. 10, 1987.

James Sayre and Becky Knutson, Des Moines, Iowa, for plaintiff.

Barry Thompson and Glenn Metcalf, Kingsley, Iowa, for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on a request for emergency relief from the plaintiff.[1] An expedited hearing was held on August 6, 1987, in which the plaintiff, defendants and the Sioux City School District were represented. For the following reasons, the Court denies the request for relief.

Plaintiff James Strayer is a 27–year-old teacher who was employed by the Remsen-Union Community School District in 1986 to teach art classes for kindergarten, elementary and secondary students. In the spring of 1987, plaintiff signed a one-year contract to teach at Remsen-Union during the 1987–88 school year (Exhibit 2). However, in June he began looking for another position. After he interviewed with Bob Patnaud of the Sioux City School District, where he presently resides and where his wife presently teaches, Patnaud recommended that Donald Sea of the Sioux City district hire the plaintiff to fill a full-time elementary art position. (Exhibit B). On

---

1. The plaintiff has not filed a separate motion stating whether he seeks a TRO or preliminary injunction, and his complaint does not clarify which form of emergency relief he seeks. Because the Court considered the plaintiff's request for emergency relief following notice to the parties and a full hearing, the Court will treat it as a request for preliminary injunction and follow the four-pronged analysis of *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc).

June 25, the plaintiff asked the Remsen-Union School Board and Superintendent Dwayne Meneely to release him from 1987–88 contract. (Exhibit A). Because Iowa Code § 279.13 prevents school districts from contracting with teachers who are already under contract to another Iowa school district, a release was necessary to permit the plaintiff to sign with the Sioux City district. (Exhibit E). In a special session on June 29, 1987, the school district denied the plaintiff's request for a release. (Exhibit G). He raised his request again at the regularly scheduled meeting on July 13 and his request was again denied. On July 29, he tendered his resignation (Exhibit D), and in a letter dated July 30, Superintendent Meneely informed him that he did not have the authority to respond to this resignation (Exhibit 1). The Sioux City school district extended the period for the plaintiff to formally apply for a position until August 7, 1987. On August 5, the plaintiff filed this action. His action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and states a claim under the Fourteenth Amendment of the United States Constitution and a pendent state law claim of intentional interference with contractual relationships. The plaintiff's request for emergency relief rests solely upon the federal law claim.

The problem presented by this case is a mirror image of the most common teacher employment dispute. While most such disputes involve teachers terminated or not rehired because a school district was dissatisfied with his or her performance, this case involves a teacher who was retained against his wishes in large part because the school district was very satisfied with his performance. The Court assumes without deciding that a district's decision not to release a teacher from a contract, like a decision to terminate, is not wholly committed to the discretion of the school board, and must comport with substantive constitutional limitations. *Bishop v. Keystone Area Education Agency No. 1*, 311 N.W.2d 279, 284 (Iowa 1981).

The parties agree that the only constitutional limitation implicated by this decision is the Equal Protection Clause's general requirement of a rational basis for governmental activity. This standard is satisfied if the action is rationally related to a legitimate governmental objective. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985). To survive this level of scrutiny, a classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object [of the action], so that all persons similarly circumstanced shall be treated alike." *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). *Cf. Scheelhaase v. Woodbury Central Community School District*, 488 F.2d 237, 244 (8th Cir.1973), *cert. denied*, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974).

▪ The scope of the Court's review under this standard is very limited, however. In determining whether a governmental entity has treated similarly situated persons alike, it should not expect perfect consistency. "The equal protection clause does not require that [governments] must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); *Eaton v. Lyng*, 669 F.Supp. 266, 274 (N.D.Iowa 1987). Furthermore, the standard does not permit courts to compare a government's responses to dissimilar circumstances in order to determine whether they are dissimilar enough to warrant differential treatment. Such an approach would invariably require the Court to second-guess school district's value judgments, and "the arbitrary or capricious standard of review is too narrow to authorize this kind of analysis." *Brands v. Sheldon Community Schools*, 671 F.Supp. 627, 633 (N.D.Iowa 1987).

▪ In this case, the plaintiff demonstrated that three other instructors were released from their contracts by the Remsen-Union School Board in the year preceding the board's refusal to release him—Ken

Balk, Mike Bies and Doug Mackey. The critical question is whether the plaintiff and these teachers were similarly situated. Mr. Balk, was the plaintiff's predecessor, and was released on June 9, 1986 after the superintendent had contacted the plaintiff in May 1986 and determined that he was interested in succeeding Balk. (Exhibit H). Thus, when Balk was released, the school board had already found a replacement who was satisfactory to the superintendent. Furthermore, Paul Crandell testified that Balk wanted to leave because members of his family were suffering from serious health problems. Mike Bies was released on April 13, 1987 in order to take a job in the pharmaceutical industry. Although the timing of the release was very inconvenient for the school district, the superintendent testified that he believed Bies would accept the other position whether or not he was released. There is no state law comparable to § 279.13 which would prohibit Bies from accepting a non-teaching position while under contract to the school district. In light of these differences, the Court finds that the releases of Balk and Bies were not comparable to the plaintiff's situation, and thus, it would not be arbitrary, capricious, unreasonable or irrational to treat the plaintiff differently from them.

The situation of Doug Mackey is more comparable, and thus poses a closer question for the Court. Like the plaintiff, Mackey did not have a special reason for leaving, and he was released only a few weeks before the plaintiff's request for a release was denied. The superintendent's testimony persuades the Court that the timing of the two requests is sufficiently distinctive to rationally distinguish them. Superintendent Meneely testified that the "prime time" for hiring teachers is between March and May, and that the pool of good teachers shrinks as the summer passes. While he testified that unsolicited resumes had been received, he also noted that none of the applicants had experience teaching in the elementary and secondary levels, unlike the plaintiff. Superintendent Meneely also testified that it took the school district six weeks to replace Mackey and that he feared it would take another six weeks to replace the plaintiff. The school district could probably have chosen a legally qualified teacher to replace the plaintiff by now. However, the school district has no obligation to accept a legally qualified teacher of a lesser quality than the plaintiff. If the school district's contract with the plaintiff means anything at all, it means that the district has a right to receive services from a teacher of the same quality as those given by the plaintiff. The plaintiff failed to demonstrate that the school district could have released him when he requested and found another teacher of equal quality. While the plaintiff has humbly noted that he was hired without any experience, and only now has one year of experience beneath his belt, the Court cannot second-guess the defendants' determination that he is a high-quality teacher. Such matters "are particularly appropriate to state and local administration." *Scheelhaase*, 488 F.2d at 244.

In conclusion, the Court notes that the following section of the *Scheelhaase* decision is particularly helpful:

> It is possible that the discretion of a Board may, to those more generously endowed, seem to have been exercised with a lack of wisdom. But the Board's decisions in the exercise of its discretion are not vulnerable to our correction merely if they are "wrong", sustainable only if they are "right".

488 F.2d at 241.

Because this Court finds that the plaintiff was not similarly situated in comparison to the other teachers released, and further finds that the reasons for treating him differently are not arbitrary, capricious, unreasonable or irrational, the likelihood that the plaintiff will prevail on the merits is too small to warrant the issuance of a preliminary injunction. *See Trucke v. Erlemeier*, 657 F.Supp. 1382, 1392 (N.D. Iowa 1987).

IT IS THEREFORE ORDERED that the plaintiff's motion for emergency relief is denied.