**LOCAL 858 OF the AMERICAN FEDERATION OF TEACHERS, a labor organization affiliated with the American Federation of Labor-Congress of Industrial Organizations, Franklin T. Garrison, for his own benefit and for the benefit of all other persons similarly situated, and Richard J. Rapp, Executive Secretary of Local 858, for his own benefit and for the benefit of all other persons similarly situated, Plaintiffs,**

v.

**SCHOOL DISTRICT NO. 1 IN the COUNTY OF DENVER and STATE OF COLORADO, Defendant,**

**Denver Classroom Teachers Association, a Colorado corporation not for profit, Intervener.**

**Civ. A. C–1393.**

United States District Court,
D. Colorado.

June 3, 1970.

Lamm & Young, by Richard D. Lamm, Tom W. Lamm and H. Anthony Ruckel, Denver, Colo., for plaintiffs.

Henry, Cockrell, Quinn & Creighton, by Richard C. Cockrell, Denver, Colo., for defendant.

Fugate, Hobbs & Waldbaum, by Larry F. Hobbs, Denver, Colo., for intervener.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on the motions of all parties for summary judgment. Plaintiffs are suing defendant School District and the Denver Classroom Teachers Association has intervened. Plaintiffs will be referred to as the AFT and the intervener will be referred to as DCTA. The essential factual background may be briefly summarized as follows. In the spring of 1969 an election was held in which a majority of the voting Denver teachers voted for the DCTA as their collective bargaining representative. The AFT lost. The School District and DCTA then entered negotiations for renewal of the previous agreement between them. At this time the AFT instituted suit, claiming that the denial by defendant of AFT's use and access to certain school facilities violated the constitutional rights of the AFT and certain individual AFT members.

Plaintiffs assert jurisdiction pursuant to 28 U.S.C.A. §§ 1343 and 2201 of a cause of action arising under the United States Constitution, Amendments One and Fourteen, and under 42 U.S.C.A. §§ 1983, 1985.

The AFT seeks a judgment declaring unlawful and enjoining the defendant from

1) denying AFT the right to use school buildings for meetings free of charge;

2) denying AFT the right to use school bulletin boards except during election campaigns;

3) denying AFT the right to use teachers' mailboxes except during election campaigns; and

4) denying AFT the right to have dues deducted from teachers' salaries.

These denials were made pursuant to the bargaining agreement between the School District and DCTA and are im-

plemented by School District publications.

The parties agree that there is no genuine issue as to any material fact. The matter has been submitted on the respective motions for summary judgment, these motions having been fully briefed and oral argument heard.

## ISSUES

The motions for summary judgment present, in essence, three issues.

1) Does this Court have jurisdiction to entertain this action? This is subject matter jurisdiction and depends primarily upon whether defendant School District is a "person" within the meaning of 42 U.S.C.A. § 1983.

2) Do the exclusive privileges granted DCTA deny the plaintiffs their First Amendment rights of free speech and association?

3) Do the exclusive privileges granted DCTA deny the plaintiffs their Fourteenth Amendment right of equal protection under the law?

## JURISDICTION

Plaintiffs have claimed jurisdiction of the Court pursuant to 28 U.S.C.A. §§ 1343 and 2201. We assume that the jurisdiction claimed under § 1343 is that of subsections (3) and (4), which provide a jurisdiction, without regard to amount in controversy, Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), for cases in which a deprivation of a civil right by state action is alleged. Section 2201 provides for jurisdiction to provide declaratory relief where an actual controversy within the Court's jurisdiction is presented. In order that the Court have jurisdiction under 2201, it must already have jurisdiction under 1443. In order that the Court have jurisdiction under 1443, a cause of action must be alleged arising under 42 U.S.C.A. §§ 1983 or 1985.

Jurisdiction under § 2201 requires establishment of two principal jurisdictional facts. First, plaintiff must allege either a federal question or diversity of citizenship. Williams v. City of Wichita, Kansas, 279 F.2d 375 (10th Cir. 1960); Federal Insurance Co. v. Michigan Mutual Liability Co., 166 F.Supp. 537 (E.D.Pa.1958). Here there is no allegation of diversity, but the alleged activity of the defendant and intervener does present a federal question based upon the impairment of First Amendment rights of free speech and assembly. The second jurisdictional fact is the existence of an amount in controversy which exceeds the jurisdictional amount prescribed by 28 U.S.C.A. § 1331(a), unless the claim presents a federal question which is excepted from this requirement. Douglas holds that the federal question jurisdiction for deprivation of civil rights is excepted from the amount in controversy requirement. Thus, if the Court does have jurisdiction pursuant to 28 U.S.C.A. § 1343, and if a cause of action is alleged within the terms of 42 U.S.C.A. §§ 1983 and 1985, jurisdiction to provide a declaratory remedy is present.

The problem under 1983 and 1343 arises because Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), holds that a municipality is not a "person" within the meaning of 1983, and therefore cannot be held liable for damages under that provision. This means that for purposes of subject matter jurisdiction, the Court does not have the power to adjudicate claims for damages for alleged violations of civil rights by municipal corporations. Defendant and intervener seek to extend the Monroe holding to apply to this case and urge that the School District is, as a subdivision of the state, not a "person" within 1983.

However, this suit is an action for injunctive and declaratory relief, not for damages. We believe that Monroe is therefore distinguishable, and our disposal of this issue is governed by Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037 (10th Cir. 1970). Dailey, a suit by several plaintiffs against the City of Lawton to enjoin the denial of a building permit for a low-income hous-

ing project, was brought under 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983. The same argument concerning the scope of "person" was raised in that case, and the Tenth Circuit Court held that a municipality and its employees may be enjoined from action that violates Fourteenth Amendment rights.

Defendant seeks to distinguish *Dailey* from the instant case and asserts that *Monroe* is after all controlling, because the defendant here is a school district while the *Dailey* defendant was a municipality. Reliance is placed on Harkless v. Sweeny Independent School Dist., 300 F.Supp. 794 (S.D.Tex.1969), a case in which black teachers who were not rehired after an integration plan was put into effect sued the school district, the superintendent and members of the school board in their official capacities. The plaintiffs in *Harkless* alleged that the failure to offer them reemployment violated their civil rights. The district court there duplicated the *Monroe* analysis of the Civil Rights Act upon which 1983 is based and concluded that Congress intended to exclude municipalities from the liabilities imposed. It further concluded that since there was no evidence of an intent to distinguish municipalities from other political subdivisions of a state, a school district as such a subdivision is not a person within 1983.

This attempt to distinguish the controlling Tenth Circuit case, *Dailey*, aside from its logical inconsistency, is not persuasive. We have found one other case which holds that a school district is not a person under 1983 because a municipality is not a person under 1983. Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964), makes this extension of *Monroe* without discussion. There are, however, numerous cases allowing suits under 1983 against school districts and other political subdivisions of states.

*Dailey* mentions two instances where the defendants were municipalities in which *Monroe* has been held not to control suits for injunctive relief under 1983. Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961); Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969). *Adams* is expressly followed on this issue by Atkins v. City of Charlotte, 296 F.Supp. 1068, 1073 (W.D. N.C.1969), a suit challenging the constitutionality of statutes prohibiting government employees from joining national school districts and legislatures in which labor organizations.

We further note numerous cases naming as party defendants states, cities, injunctive relief from violation of constitutionally protected rights was sought under 1983. These cases ignore the *Monroe* holding, do not discuss the "person" issue, and were decided after *Monroe*, thus rendering the illusive meaning of the famous footnote 50, 365 U.S. at 191, 81 S.Ct. 473, irrelevant. *See,* Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Lucas v. Forty-Fourth General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); and Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

The *Harkless* decision is contrary to the position of two judicial circuits, which have allowed the exact type of lawsuit against school districts by teachers displaced by implementation of integration plans. Wall v. Stanley County Board of Education, 378 F.2d 275 (4th Cir. 1967), and Rolfe v. County Board of Education of Lincoln County, Tenn., 391 F.2d 77 (6th Cir. 1968), were both decided without reference to the "person" issue.

Finally, we note the disposition of this issue on a motion to dismiss by Judge Doyle of this Court in an order of October 17, 1969 in Wilfred Keyes v. School District Number One, C–1499. That case involves the same party defendant and Judge Doyle's Memorandum Opinion discusses the issue of whether or not the School District is a "person" within

1983. *Monroe* was distinguished on the grounds that it was a suit for damages, while *Keyes* was for injunctive relief, and because it has been ignored by the Supreme Court in numerous cases involving governmental agencies.

We therefore conclude that *Dailey* governs our disposition of this issue, that the School District is a "person" within the meaning of 1983 for purposes of injunctive and declaratory relief, and that the Court does have subject matter jurisdiction over the cause of action alleged under 42 U.S.C.A. § 1983 pursuant to 28 U.S.C.A. § 1343. Thus, jurisdiction to provide declaratory relief under 28 U.S.C.A. § 2201 is also proper.

### FIRST AMENDMENT ISSUE

Plaintiffs claim that the granting of the enumerated special privileges to the DCTA by the defendant denies the plaintiffs' rights of free speech and association. However, plaintiffs have failed to support this contention with convincing authority.

There is a First Amendment right to form and join union organizations and this right extends to members of the teaching profession. McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); American Federation of State, County and Municipal Employees v. Woodward, 406 F.2d 137 (8th Cir. 1969). This right is violated by the discharge of a municipal employee on the grounds of such membership alone. *Woodward, supra.* Further, it is a violation of the rights of free speech and association to dismiss or refuse to renew the contract of a teacher for civil rights activity. Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966); Rackley v. School District No. 5, Orangeburg County, S. C., 258 F.Supp. 676 (D.C.S.C.1966); and Williams v. Sumter School District No. 2, 255 F.Supp. 397 (D.C.S.C.1966).

This case law, while establishing the right to union membership for school teachers, and delineating the extent to which that right is protected, does not apply directly to the problem here posed.

Thus, it appears that we must consider this matter one of first impression for the federal courts. We have been cited several state court cases dealing directly with the matter of whether or not the granting of special privileges to the collective bargaining representative of public employees is unlawful, and some of these deal with school teachers. However, although they provide helpful guidance, they are not dispositive of the issues presented. We choose to analyze the problem in terms of the basic constitutional issue asserted, utilizing the broad constitutional principles which govern First Amendment rights.

This case presents a departure from classic labor law in that the employer is a public entity, a school board, and the place of employment is a public institution of a character presenting special yet distinct opportunities for the exercise of First Amendment rights. Thus, we must carefully distinguish the exercise of those rights peculiarly involved in the employer-employee relationship from broader rights of speech and association. Plaintiffs have not sufficiently focused their challenge to the School Board's action. Their brief generally alleges and seeks to support their allegation of interference with organizational rights. Their argument, on the other hand, is directed to a claim of impairment of broader rights of free speech. The Court will attempt to provide the requisite focus, for the total scope of the First Amendment protections is too broad to attempt to deal with the alleged impairment without a precise characterization of what is in issue.

We do not accept plaintiffs' contention, belatedly clarified at argument, that the issue here is a broad restriction on free speech. We acknowledge that the public schools are a public institution which present special opportunities for the exercise of the First Amendment right of free speech. However, this case does not present that issue. The parties are so situated and the controversy arose under such circumstances that plaintiffs seek to utilize certain facilities that are

clearly distinct from pure speech rights. This case presents a problem of labor relations, and although the problem is in the context of public employment, this does not alter its essential character. Plaintiffs are a labor union and its officials and members, and they are seeking to utilize only those internal channels of school communication which are not traditionally of a public nature for the purpose of furthering the goals of their union. The privilege of dues check off which they claim is peculiarly a matter of labor relations. Thus, we do not accept plaintiffs' characterization of the issue as one of alleged impairment of broad First Amendment rights. Rather, the case presents the precise issue of whether or not the granting of the four enumerated exclusive privileges to the DCTA impairs the right to organize and form unions of Denver teachers who are not members of the DCTA.

Only if the grant to the DCTA of exclusive privileges constitutes such an impairment is there a violation of the First Amendment. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 44, 57 S.Ct. 615, 81 L.Ed. 893 (1937), establishes that a private employer may grant to a labor organization which has been elected the collective bargaining representative certain exclusive contract rights. The employer has an obligation to treat with this representative exclusively and has a negative duty to treat with no other. Plaintiffs have cited no case law, nor has our research revealed any, which successfully challenges the *Jones & Laughlin* holding as a violation of First Amendment rights. We have been shown no authority, nor has a convincing argument been advanced, to show a constitutional infirmity in extending the *Jones & Laughlin* duty from private employers to public employers.

Plaintiffs' argument that the granting of exclusive privileges violates their constitutional right to form and join union organizations contains two basic elements. The first is their claim that broad rights of free speech are impaired. Appropriate characterization of the issues renders this argument nothing more than appealing rhetoric. The other element is the state court cases dealing with the precise issues. We will summarize the holdings of these cases, and then evaluate their import in the context of the basic constitutional problem.

Ryan v. Board of Public Instruction of Dade County, Nos. 68–18283 and 68–19627, Circuit Court, Eleventh Judicial Circuit, Dade County, Florida (Feb. 26, 1969), is claimed to stand for the proposition that awarding exclusive privileges to use teachers' mailboxes, school bulletin boards, and classrooms for meetings to one labor organization violates the constitutional rights of other unions. The case does enjoin the Dade County Board from granting exclusive privileges, but the foundation of that court's ruling is that collective bargaining for public employees is unlawful in Florida, and therefore the granting of special privileges is unreasonable and discriminatory. The case contains no specific finding that dealing with the elected representative of public employees in a legal collective bargaining relationship violates the United States Constitution.

Cartwright Federation of Teachers Local 1748 v. Cartwright School District, No. C205779, Superior Court of Arizona in and for County of Maricopa (October 30, 1968), arises in a different factual context, apparently, although involving an attempt by the plaintiff there to secure the use of the same facilities as sought in the case before the Court here. In *Cartwright,* the School District, after a request for the use of the facilities had been made and suit instituted to compel the District to allow such use, promulgated rules and regulations for the use of the facilities. The court ruled that classes of users established and one of the rules were without justification, that they denied freedom of association and assembly in violation of the First Amendment, and that they also violated the equal protection and due process clauses of the Fourteenth Amendment. The rule which violated these constitutional protections required the labor or-

ganizations to make application for the use of the facilities, that the application must set forth, in addition to other information, names and addresses of responsible officers, membership lists of the organization, and the names and addresses of persons attending the event.

The *Cartwright* case does not appear to have arisen in the same context as our case, where a duly elected collective bargaining representative of the public employees negotiated an agreement with the District granting exclusive access to the facilities in question. *Cartwright* rather presents a situation where the school district action clearly discriminates against labor organizations in the use of school facilities. Further, this action violates the rule of Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), which held that an Arkansas statute requiring every teacher, as a condition of employment in a state-supported educational institution, to file an annual affidavit listing his membership or contributions to organizations, was a violation of the First Amendment freedom of association. The regulations under which the Denver School District allows the DCTA to use the facilities in question exclusively do not contain these constitutional infirmities.

We do not find these two cases persuasive. Our issue is freedom of association. This is a First Amendment freedom which may be impaired by state action when the state can show a compelling interest which, when balanced against the substantive right to be protected, outweighs that right. Schneider v. State, 308 U.S. 147, 161, 60 S.Ct. 146, 84 L.Ed. 155 (1939). The grant of exclusive privileges to one of two competing unions after that union has won a representation election serves several interests. It allows the effective exercise of the right to form and join unions in the context of public employment. It provides the duly elected representative ready means of communicating with all teachers, not just the DCTA membership. This is essential, since the DCTA represents *all* teachers,

not just its membership. It eliminates inter-union competition for membership within the public schools except at time of representation elections. This has several salutary aspects. Orderly functioning of the schools as education institutions is insured through the limiting of the time span when they may become a labor battlefield. The representative union is not subjected to competition within the schools, and thus is better able to function as a representative, its efforts not spent in constant competition with the union that lost the representation election. The fact that the representative's strength is not bled away by such constant high intensity inter-union conflict allows the public employees better representation, providing a more beneficial exercise of the right of association. Finally, all of these benefits resulting from the grant of exclusive privileges to the elected representative serve the principal policy of insuring labor peace in public schools. Labor peace means a continuity of ordered collective bargaining between school officials and representatives of the teachers. It means a lowered incidence of labor conflict and strife, thus insuring less interference with the functioning of the public schools as educational institutions.

Against these interests we must balance the limited interference with plaintiffs' right to associate. The interference is that they are not granted equal access to internal channels of communication, nor are they granted a check off. There is no allegation that plaintiffs' normal means of communication with teachers is impaired. Defendant and intervener argue that if in fact the defendant can lawfully deny access to these facilities to all persons, then there exists no *right* to their use. We find this argument compelling. Plaintiffs do not contend that they have a *right* to a dues check off as a part of their right to associate.

The delicate task of applying the constitutional balancing test to measure the substantiality of the reasons argued in support of restriction of the

First Amendment freedom of association is made easier in a case such as this, where the interests asserted are numerous, a policy as vital as public education is the goal, and negligible impairment is proved. We find that the plaintiffs have not proved significant interference with their freedom of association, and we find that the defendant has proved that substantial state interests are served by the grant of exclusive privileges to the intervener. We find no action on the part of the defendant denying the plaintiffs' right to meet, to speak, to publish, to proselytize or to collect union dues. Plaintiffs have the right to do these things through the means employed by other organizations. We agree with the New York Court of Appeals decision, Bauch v. City of New York, 21 N.Y.2d 599, 289 N.Y.S.2d 951, 237 N.E.2d 211 (1968), cert. den. 393 U.S. 834, 89 S.Ct. 108, 21 L.Ed.2d 105, that neither the First Amendment nor any other constitutional provision entitles a public employees' union which has lost a representation election to the special aid of a public employer's collection and disbursing facilities.

### FOURTEENTH AMENDMENT ISSUE

The essence of plaintiffs' Fourteenth Amendment claim is that giving exclusive privileges to the DCTA amounts to a giving of the privileges to certain members of the teaching profession, while arbitrarily denying them to others. This alleged arbitrary denial is claimed to constitute a denial of equal protection of the laws. Plaintiffs have at times articulated their claim as being based upon an alleged violation of due process, but we find that the only claim which can be reasonably advanced is equal protection.

The facts show that a classification is established creating a distinction between the DCTA which won the representation election, and the FTA, which lost. The facts do not show that the distinction exists among members of the teaching profession in Denver schools. All members of the profession are represented by the DCTA in dealings with the School District and none are represented by the FTA, since the FTA does not deal with the District. However, in order to fully dispose of the issue, and do so in terms which recognize to the fullest extent possible any constitutional claims that the plaintiffs do have, we will assume that there is some distinction among members of the teaching profession in Denver schools, based upon which union they belong to.

Two tests for unconstitutional denial of equal protection exist. Where the classification allegedly violating equal protection is challenged as being irrational, it satisfies the Constitution if there exists a rational relationship between the distinction and constitutionally permissible objectives. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). However, where the classification allegedly circumscribes the exercise of a constitutional right, it is unconstitutional unless shown to be necessary to promote a compelling governmental interest. Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). We are satisfied that the grant of exclusive privileges to the duly elected bargaining representative of public school teachers by the School District promotes a compelling government interest. The interests of the state above outlined in our discussion of the First Amendment claim are compelling, for labor peace and stability in an area as vital as public education are indisputably a necessity to the attainment of that goal. Inter-union strife within the schools must be minimized. Unnecessary work stoppages and the consequent impairment of the educational process cannot be tolerated without significant injury to public education.

Thus, we find that the grant of special privileges attacked here satisfies the strictest test for constitutional equal protection. We make this finding although we are not convinced that in fact the classification challenged impairs the exercise of a constitutional right. Therefore, plaintiffs have not proved that the

action of the defendant and intervener denies them equal protection of the laws in violation of the Fourteenth Amendment. It is therefore

Ordered that the motion of the plaintiffs for a summary judgment shall be and is hereby denied. It is further

Ordered that the motion of the defendant for a summary judgment shall be and is hereby granted; and it is further

Ordered that the motion of the intervener for a summary judgment shall be and is hereby granted.