Donald WEATHERS, Plaintiff,

v.

**WEST YUMA COUNTY SCHOOL DIS-
TRICT R–J–1 et al., Defendants.**

Civ. A. No. C–5432.

United States District Court,
D. Colorado.

Dec. 12, 1974.

Larry F. Hobbs, Denver, Colo., for plaintiff.

Gerald A. Caplan, Boulder, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

■ This action arises under 42 U.S. C. §§ 1983 and 1985. Plaintiff, Donald Weathers, was employed as a teacher by defendant school district from August 25, 1970 through August 24, 1972. On March 9, 1972, the Board of Education for the school district voted not to renew Mr. Weathers' employment contract for the following academic year. He was notified of this fact by letter. Plaintiff alleges that defendants failed to provide him with notice of the reasons for their decision and with a pretermination hearing to review the board action. He maintains that such failures constitute deprivations of both "property" and "liberty" without the procedural due process demanded by the Fourteenth Amendment. He further alleges that defendants' action was, on its merits, arbitrary and capricious, in violation of his substantive rights under the Due Process Clause of the Fourteenth Amendment.[1] By way of relief, plaintiff seeks, *inter alia*, reinstatement to his teaching position together with back pay plus damages for emotional distress and loss of reputation.

Defendants are the West Yuma County School District R–J–1 and the various directors of the district serving in that capacity at the time of the challenged action.[2] The latter defendants are sued in both their official and individual capacities. The primary contentions of the

1. Plaintiff also contends that defendants' administrative regulations and their manner of application to his case are violative of equal protection guarantees. The school board's regulations require that written notice of "unsatisfactory conditions" be given a superintendent before he receives notice of termination. [School Board Policies, § 3.4] The fact that no similar provision exists for teachers does not present even a colorable denial of equal protection. The formal notice requirements of § 3.4 reflect a legitimate concern for the adverse affects which the entire district suffers at the hands of an ineffective or incompetent superintendent. Such detriments are more widely felt, and in a real sense, are far more prejudicial to the educational interests of the district than are the detriments resulting from problems with one teacher. Additionally, a superintendent, as the "chief administrative officer" of the school district, is not protected by statutory tenure provisions. [*See,* C.R.S. (1963), 123–18–2(4) (Supp.1967)] We cannot say that it is unreasonable to provide the superintendent with procedural protections different from those provided teachers. In short, this alleged "classification difference" between administration and teachers is reasonably related to legitimate objectives. [*See,* e. g., Rodriguez v. San Antonio Independent School Dist., 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Local 858 of the American Federation of Teachers v. School Dist. No. 1, 314 F.Supp. 1069 (D.Colo.1970)] Moreover, from the evidence presented at trial, it is certain that plaintiff was given oral notice of "unsatisfactory conditions" more than a month before the board voted not to renew his contract. [*See,* text p. 559, *infra*] We also find no evidence that plaintiff was treated differently with regard to contract renewal than was any other probationary teacher within the district.

2. The parties have stipulated to the fact "[t]hat defendants Mary Lambert and Duane Blessman were not members of the Board of Education at the time of the complained action." [Pretrial Order, ¶ B(7), p. 4]

defendants may be summarized as follows: (1) that plaintiff was a probationary, nontenured teacher under the Colorado Employment, Dismissal and Tenure Act of 1967 [C.R.S. (1963), 123–18–1 to 123–18–19 (Supp.1967)], and as such he possessed no "property interest" within the ambit of the Fourteenth Amendment; (2) that the decision not to reemploy the plaintiff, including the circumstances surrounding that decision, did not deprive him of any "liberty interest" within the meaning of any constitutional provision; (3) that the decision was not, on its merits, arbitrary and capricious; (4) that the court lacks jurisdiction over the defendant school district, because it is not a "person" within the meaning of 42 U.S.C. § 1983; and (5) that the doctrines of sovereign and official immunity either bar this action entirely or that they limit the relief which may be afforded the plaintiff.

After trial to the court, the matter is ripe for disposition. Because of our decision below on plaintiff's primary constitutional claims, it is unnecessary to reach all the issues raised by the defendants. Consequently, we restrict our preliminary discussion to those questions which relate to the jurisdiction of the court.

## I. The School District as a Section 1983 Person

In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court declared that a "municipal corporation is not a 'person' within the meaning of § 1983." (*Id.* at 191, n. 50, 81 S.Ct. at 486) Subsequently, many lower courts construed the rule in *Monroe* as applying only to suits seeking damages, and that for purposes of *equitable relief*, political subdivisions of the state as well as state agencies could be treated as § 1983 persons. [*See, e. g.,* Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961); *cf.,* Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964)] This was also the dominant view as regards school districts. [*See, e. g.,* Harkless v. Sweeny Independent School Dist., 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Adams v. School Bd. of Wyoming Valley West School Dist., 53 F.R.D. 267 (M.D.Pa.1971); Abel v. Gousha, 313 F.Supp. 1030 (E.D.Wis. 1970)] Indeed, this court held in Local 858 of the American Federation of Teachers v. School Dist. No. 1, 314 F. Supp. 1069 (D.Colo.1970), that "the School District is a 'person' within the meaning of 1983 for purposes of injunctive and declaratory relief . . . ." (*Id.* at 1074) This holding was consistent with the precedents of this circuit. [*See, e. g.,* Dailey v. City of Lawton, 425 F.2d 1037 (10th Cir. 1970)]

However, in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L. Ed.2d 109 (1973), Justice Rehnquist stated:

We find nothing in the legislative history discussed in *Monroe,* or in the language actually used by Congress, to suggest that the generic word "person" in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe,* "Congress did not undertake to bring municipal corporations within the ambit of" § 1983, [365 U.S.] at 187, [81 S.Ct. at 484,] they are outside of its ambit for purposes of equitable relief as well as for damages. [*Id.* at 513, 93 S.Ct. at 2226]

We believe this reasoning dictates that we not follow our holding in *Local 858, supra.* The original distinction between legal and equitable relief against municipal corporations, state agencies, and other governmental units, including school districts, was predicated on the limiting construction of *Monroe.* Thus, we hold that the school district is not a § 1983 person for purposes of either legal or equitable relief. [*See,* Kelly v. Wisconsin Interscholastic Athletic Ass'n, 367 F.Supp. 1388 (E.D.Wis.1974)] Of course, if a school district is not a "per-

son" within the meaning of § 1983 for any purpose, it is also not a "person" under 42 U.S.C. § 1985. [Potts v. Wright, 357 F.Supp. 215 (E.D.Pa.1973)] This court, therefore, lacks jurisdiction over the claims against the defendant school district under 28 U.S.C. § 1343.

■ Finally, plaintiff asks us to "bootstrap" our jurisdiction over the school district by application of the "federal question" statute, 28 U.S.C. § 1331. However, the remedies sought by plaintiff are directly dependent upon or ancillary to §§ 1983 and 1985. Since *no* remedy exists against the school district under these provisions, our assertion of federal question jurisdiction would be, at best, meaningless.

## II. *Sovereign Immunity, Official Immunity and Privilege*

Our conclusion that no remedy is available against the defendant school district means that we need not decide whether plaintiff's claim for damages is also barred by the doctrine of sovereign immunity and the Eleventh Amendment. [*See*, Harris v. Tooele County School Dist., 471 F.2d 218 (10th Cir. 1973); *but see*, Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Smith v. Losee, 485 F.2d 334 (10th Cir. 1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974)] As to plaintiff's claim for equitable relief, it is clear that any decree against the individual board members would be just as effective as a decree issued against all the defendants, including the school district. [*See, e. g.*, Harper v. Kloster, 486 F.2d 1134 (4th Cir. 1973)]

■ We also believe that the holding in Smith v. Losee, *supra* at 340–344 is· dispositive of the official immunity asserted by the individual board members. There is no *per se* bar to the court's jurisdiction over these defendants. [*See also*, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)] However, the doctrine of official immunity is available to them as a matter of affirmative defense or qualified

privilege. [Smith v. Losee, *supra* at 344]

■ We conclude, therefore, that this court has jurisdiction over the present claims against the individual board members under 28 U.S.C. §§ 1343 and 1331.

## III. *Plaintiff's Constitutional Claims*

■ The thrust of plaintiff's cause of action rests on two Supreme Court holdings: Board of Regents v. Roth, 408 U. S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann, 408 U. S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In these cases, the Court held that if the nonrenewal of a probationary or nontenured teacher's contract constitutes a deprivation of either a "property" or "liberty" interest encompassed by the Fourteenth Amendment, then the teacher is entitled to notice of the reasons for nonrenewal as well as a pretermination hearing. The Court defined the "property" interest requisite to these procedural guarantees as follows:

> To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. [Board of Regents v. Roth, *supra* at 577, 92 S.Ct. at 2709]

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. [Perry v. Sindermann, 408 U.S. *supra* at 601, 92 S.Ct. at 2699]

In short, plaintiff must establish an *objective* expectation of continuing employment—an expectation which would be commonly recognized and which is evidenced either by explicit statutory or contractual entitlement or by the implicit policy and practices of the parties.

■ As to the "liberty" interest which might arise from nonrenewal of an employment contract, the Court rec-

ognized two means of demonstrating such interest: first, where the nonrenewal occurs under such circumstances or after such accusations as "might seriously damage [plaintiff's] standing and associations in his community." [Board of Regents v. Roth, *supra* at 573, 92 S. Ct. at 2707]; and second, where the nonrenewal and related circumstances impose on the teacher "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." [*Id.*]

The success of plaintiff's procedural due process claim, then, depends on our finding that he possessed either the "property" interest or one of the two "liberty" interests just enumerated. Each of these possibilities is analyzed below in relation to the evidence presented at trial.

### A. *The Property Interest*

In the spring of 1970, plaintiff was offered a one year contract by the defendant school district to teach Science and Physical Education.[3] The contract was renewed in the spring of 1971 for the following school year. Both contracts were for a specified term, one ending on August 24, 1971 and the other on the same date in 1972. We find from the evidence no promise or suggestion of plaintiff's continued employment beyond the terms of these contracts. Indeed, by plaintiff's own testimony, it is clear that he was a probationary teacher. Nor is there any evidence of a general custom or "common law" of automatic contract renewal for probationary teachers.

The formalized policy of the state of Colorado pertaining to teacher tenure is contained in C.R.S. (1963), 123–18–12 (Supp.1971). It clearly states that a teacher must be employed "in the same school district . . . continuously and without interruption for three full academic years" and then "reemployed for the fourth academic year . . . ." before he or she gains any statutory rights to continuing employment. [*See*, Powers v. Mancos School Dist. RE–6 Montezuma County, 369 F.Supp. 648 (D.Colo. 1973)]

Similarly, the administrative regulations of the school district contain the following provisions:

### § 8.4 *Probationary Teachers*

All teachers shall successfully serve a probationary period of three (3) consecutive years prior to attainment of tenure status . . . .

### § 8.7 *Dismissal of Teachers*

The Board may dismiss any teacher for good cause. Teachers with tenure status shall be dismissed only for good cause or other reasons as specified in the tenure statute. The procedure for the dismissal of tenure teachers shall be as specified in the tenure statute.

The Board may refuse to renew the contract of any probationary teacher for cause or without cause. In the event a teacher is not to be employed for the succeeding year, the Board shall cause written notice to be given the teacher on or before the fifteenth (15th) day of April.

All this evidence raises a strong inference that if plaintiff had any expectation of continued employment, it was a purely subjective and unilateral one. [*See also*, Frazier v. Curators of University of Missouri, 495 F.2d 1149 (8th Cir. 1974); Canty v. Board of Education of City of New York, 470 F.2d 1111 (2d Cir. 1972), cert. denied, 412 U.S. 907, 93 S.Ct. 2301, 36 L.Ed.2d 973 (1973); National Education Ass'n, Inc. v. Lee County Bd. of Public Instruction, 467 F.2d 447 (5th Cir. 1972); Buhr v. Buffalo

---

3. Before being employed by defendants, Mr. Weathers taught in the Boulder Valley school system for sixteen years. His tenure in that district *does not constitute tenure in the defendant school district.* [*See*, C.R.S. (1963), 123–18–12(1) (Supp.1971)] The defendants, by resolution of the Board of Education, could have granted plaintiff tenure based on his prior service [*Id.* at 123–18–12(2)(c)]; however, no such resolution appears in the evidence.

School Dist. No. 39, 364 F.Supp. 1225 (D.N.D.1973)]

Plaintiff offers three arguments in opposition to this conclusion. First he points to paragraph 6 of his employment contract as evidence of a mutual and common understanding between the school board and the probationary teacher regarding continued employment:

[T]his contract shall, in accordance with the law, become effective for the next year succeeding the term of this contract if notification to the contrary is not given by either the Board or the teacher as required by law . . . .

This clause reflects the statutory notice requirement and "automatic reemployment" provision contained in C.R.S. (1963), 123-18-10 (Supp.1967). This statute creates a presumption of offer and acceptance from the silence of the parties; however, the fact that the school board must act affirmatively to prevent automatic reemployment is, without more, insufficient to establish an objective expectation of continued employment. The contractual and statutory language are clearly procedural and not indicative of any substantive policy or right. This precise issue was addressed by the court in Shirck v. Thomas, 486 F.2d 691 (7th Cir. 1973):

[Plaintiff] argues, however, that the Illinois statute requiring that she be given [statutory notice of nonrenewal] created a sufficient "property" interest to bring the due process clause into play. This argument confuses the decisive distinction between procedure and substance. Since the Illinois statutory procedure was observed, that statute affords plaintiff no substantive right. (Id. at 692)[4]

Plaintiff in the instant action was given statutory notice more than a month before the April 15th deadline specified in

C.R.S. 123-18-10. Thus, we must reject plaintiff's contention in this regard.

The second line of argument presented by plaintiff rests on cases holding that the existence of statutory or administrative procedures governing nonrenewal may be evidence of an objective expectation in continued employment. [See, e. g., Zimmerer v. Spencer, 485 F.2d 176 (5th Cir. 1973); Greene v. Howard University, 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969); Lusk v. Estes, 361 F. Supp. 653 (N.D.Tex.1973); Francis v. Ota, 356 F.Supp. 1029 (D.Hawaii 1973)] In the present case, however, there are no such administrative procedures, and the only relevant statutory provision pertains to *dismissal* of *tenured* teachers. [C.R.S. (1963), 123-18-17 (Supp. 1967), as amended, (Supp.1971)] The conspicuous omission of any procedures for making nonrenewal decisions in cases of probationary teachers distinguishes this case from the precedents cited by plaintiff.

Finally, there is evidence that John Maurice, the principal of the school where plaintiff was employed, had recommended that plaintiff's contract be renewed for a third year. Plaintiff maintains this evidences the necessary objective expectation. This argument is also without merit. In Colorado, only a Board of Education has the power to contractually bind a school district. [See, C.R.S. (1963), 123-30-9 (Supp.1965)] As the court held in Cookson v. Lewiston School Dist. #1, 351 F.Supp. 983 (D.Mont.1972):

Plaintiff's claim that the recommendation of the principal to the superintendent and the superintendent to the school board gave her a job entitlement is not tenable in view of the fact that the power to make teaching contracts is vested solely in the school board. These recommendations may

4. This decision was rendered *after* the Supreme Court granted certiorari and remanded the case for further consideration in light of *Roth, supra.* The previous judgment, reported at 447 F.2d 1025, was vacated. [*See*, 408 U.S. 940, 92 S.Ct. 2848, 33 L.Ed.2d 764 (1972)]

have created in plaintiff's mind an expectation that she would be reemployed but a unilateral expectation of employment is not sufficient to constitute the kind of an entitlement which enjoys 14th amendment protection. [*Id.* at 985]

We find, therefore, that plaintiff possessed no formal statutory or contractual right or entitlement to continued employment, and that, at least within the defendant school district, there is no informal custom or policy of reemployment within the meaning of *Roth* and *Sindermann*. Since there was no objective expectation of continued employment, plaintiff possessed no "property" interest protected by the Fourteenth Amendment.

## B. *The Liberty Interest*

From the evidence elicited at trial, it appears that in early February 1972, the defendant school board met for preliminary discussions regarding reemployment of the district's probationary teachers. At this meeting, the board members discussed certain letters from children and parents of children who had been in plaintiff's classes or who had otherwise had contact with him. These letters contained complaints about Mr. Weathers, to wit: that he had called a student a "dumb son-of-a-bitch" during a basketball game; that plaintiff's grading practices were unfair; and that his teaching methods were ineffective, in that students did little more than "take notes" and do "busy work."

On the following day, the school principal informed Mr. Weathers of the complaints, and subsequently, some efforts were made to resolve them. On February 29, 1972, plaintiff attended a "closed" executive session of the school board where he was given an opportunity to explain his conduct and performance in relation to the complaints. He denied the use of profanity and sought to justify his teaching methods and grading procedures.

On March 9, 1972, the board met again and voted unanimously not to renew plaintiff's contract. The minutes of this meeting do not reflect the reasons for this decision, but the testimony at trial is uncontroverted that the decision was based on the aforementioned complaints. The board did not "publish" the reasons for its action, and the letter to the plaintiff stated only that "[a]fter evaluation of your over-all performance a unanimous vote was cast not to re-employ you for the 1972–73 school year."

Plaintiff contends that these actions, taken as a whole, deprived him of a liberty interest within the meaning of *Roth* and *Sindermann*. We do not agree.

As to the first "liberty" test stated in *Roth*, namely whether the nonrenewal occurred under such circumstances as "might seriously damage [plaintiff's] standing and associations in his community," we find no evidence supporting plaintiff's position. Despite the fact that one of the letters of complaint alleges that "our jr. high boys [sic] morals have suffered greatly with this coach," and another charges that plaintiff called one student a "dumb son-of-a-bitch," there was in fact no accusation of such immorality as would seriously damage Mr. Weathers' personal reputation. Furthermore, the content of these letters, in all probability, would not have been known to anyone outside the local school system had this litigation not been initiated. The letters were not included in plaintiff's personnel file, but had apparently been set aside in a special file prepared solely for purposes of this litigation. To say that plaintiff *may* show the requisite damage to his reputation by himself "publishing" this material is simply bootstrapping. Moreover, this suit is not part of those "circumstances" to be considered in applying the principles of *Roth*.

We find that the charges contained in these letters do not impugn the plaintiff's integrity, character, or standing in the community. At most, they suggest that plaintiff may, on occasion, exercise poor judgment as to the social settings in which he swears. After examining

the board's decision and all relevant circumstances, we conclude that whatever harm plaintiff's reputation has suffered, it is not the "*serious damage*" to which the Court referred in *Roth*. [*See, e. g.,* Shirck v. Thomas, *supra* 486 F.2d at 692; Lipp v. Board of Education of City of Chicago, 470 F.2d 802 (7th Cir. 1972); *see also,* Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L. Ed.2d 515 (1971)]

We reach the same conclusion as to the second "liberty" test from *Roth*. As the Court observed:

> Mere proof . . . that [a] record of nonretention in one job, taken alone, might make [an individual] somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of "liberty." [*Id.* at 574, n. 13, 92 S.Ct. at 2708]

Plaintiff urges that the reasons for his nonretention are *additional* factors which must be considered, together with the fact of nonretention, in reaching a resolution of this issue. But far more aggravated circumstances than those appearing in this case have been found insufficient. For example, in Ferris v. Special School Dist. No. 1, 367 F.Supp. 459 (D.Minn.1973), the plaintiff teacher was accused of being "defensive, rude, argumentative, and sullen" and of becoming "almost inoperative in her relationships . . . ." The court found no deprivation of liberty. Similarly, in both Shirck v. Thomas, *supra* and Lipp v. Board of Education of City of Chicago, *supra*, the nonretention decisions were based, in part, on the teacher's performance and efficiency. Such factors were again held inadequate to support a finding of "liberty" deprivation.

▮▮▮ In the instant case, there was no "posting" or "publication" of the reasons for the board action. There is no

evidence that plaintiff, either in fact or in theory, has suffered a measurable loss of opportunity for "other employment" in the teaching profession. Indeed, plaintiff on cross-examination said he did not believe he was entirely foreclosed from teaching in a different district, but rather than the defendant's actions have rendered him a "less attractive" candidate for such positions.

We find from the evidence presented nothing even remotely approximating the imposition upon plaintiff of "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." [Board of Regents v. Roth, *supra* at 573, 92 S.Ct. at 2707; *see also,* Calvin v. Rupp, 471 F. 2d 1346 (8th Cir. 1973)]

In summary, we conclude that plaintiff possessed no "property" or "liberty" interest within the guarantees of the Fourteenth Amendment. He, therefore, was not entitled to any notice of the reasons for his nonretention or to a pretermination hearing on the question.[5]

Having reached these conclusions, it becomes unnecessary to address plaintiff's final claim that defendants acted "arbitrarily and capriciously" in violation of his substantive due process rights. Even if the board's decision were patently unfair, an issue upon which we express no opinion, the plaintiff's lack of either a property or liberty interest would prevent such unfairness from attaining constitutional significance. [*See, e. g.,* Ferris v. Special School Dist. No. 1, *supra* 367 F.Supp. at 460–461; *see also,* Scheelhaase v. Woodbury Central Community School Dist., 488 F.2d 237 (8th Cir. 1973), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L. Ed.2d 1140 (1974)]

Plaintiff does not contend that the board's action was precipitated by his exercise of First Amendment freedoms or other constitutionally guaranteed

---

5. Note that plaintiff received oral, informal notice of the complaints lodged against him prior to his appearance before the board on February 29, 1972. By his own testimony, plaintiff was given full opportunity to rebut the allegations contained in the letters of complaint. We do not decide here whether such procedure was constitutionally sufficient had plaintiff established either a "property" or "liberty" interest.

rights. [*See,* Perry v. Sindermann, *supra*] As the court ruled in Shumate v. Board of Education of County of Jackson, 478 F.2d 233 (4th Cir. 1973):

This is not to say that a school board may not decline to renew [a nontenured] teacher's contract for a good reason or for no reason. It may not do so for a bad reason if the bad reason is one's lawful exercise of constitutionally protected rights. (*Id.* at 234)

Plaintiff has not suggested any "bad reasons" for the board's action and none appears in the evidence. In short, plaintiff has not offered any evidence which would permit us to reach the *merits* of his nonrenewal. [*See also,* Chitwood v. Feaster, 468 F.2d 359 (4th Cir. 1972)]

The foregoing constitutes the court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. It is, therefore

Ordered that judgment be entered in favor of the defendants and against the plaintiff. It is further ordered that plaintiff's cause of action be and the same hereby is dismissed. Each party shall bear its own costs.