**Ewell WELCH, Doug Vess, Orville Tougaw, and Bill Mitchell, Appellants,**

v.

**Dr. Jim F. BARHAM, Appellee.**

No. 79–2008.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1980.

Decided Nov. 7, 1980.

Rehearing and Rehearing En Banc Denied Dec. 5, 1980.

Robert V. Light, Little Rock, Ark., for appellants.

Ernie Witt, Thomas F. Donovan, Dardanelle, Ark., for appellee.

Before HEANEY and BRIGHT, Circuit Judges, and HUNGATE, District Judge.*

* WILLIAM L. HUNGATE, United States District Judge, Eastern District of Missouri, sitting by designation.

BRIGHT, Circuit Judge.

Dr. Jim Barham brought this action under 42 U.S.C. § 1983 (1976) and state law against the Havana Public School District # 86, Yell County, Arkansas, and the five members of the Havana School Board (the Board), seeking reinstatement, equitable relief, and damages. His complaint alleged that the defendants, by prematurely terminating his employment as superintendent of the Havana School District, deprived him of free speech and due process and violated his state contract rights.

At the conclusion of plaintiff's proof, the district court, dismissed the action as to the school district and James Frame, a board member who did not vote for termination. The court also dismissed the first amendment claim. At the close of the five–day jury trial, the court determined as a matter of law that because of the bias of two school board members, the Board had reached its decision to discharge Barham without affording him the fair and impartial hearing required under the due process clause.[1] *Barham v. Welch*, 478 F.Supp. 1246, 1249 (E.D.Ark.1979). Accordingly, the court decided to make an equitable award of backpay, but denied reinstatement because the contract period had terminated by the time of trial.

The district court submitted to the jury the issues of damages to professional reputation, punitive damages, and the Board's defense of good faith,[2] but the jury failed to reach agreement on these issues and the court declared a mistrial. The court thereafter entered an order against the four remaining school board members in their official capacities, awarding Barham backpay in the amount of $14,906.84 and attorneys' fees, expenses, and costs in the amount of $11,044.04.[3]

The four members of the school board sought an appeal from this interlocutory order under 28 U.S.C. § 1292(b) (1976). The district court certified the due process question[4] and this court permitted the interlocutory appeal. Appellants argue on appeal that the district court erred

1) in ruling that the Board was not sufficiently impartial to satisfy the requirements of the due process clause of the fourteenth amendment;

2) in ruling that the defense of good faith was not applicable to the equitable award for backpay, counsel fees, expenses, and costs; and

3) in making the equitable award against two board members whose impartiality was not attacked and in refusing to dismiss the case as to them.

We reach only the first issue and hold that the manner of discharging Barham did not deprive him of property without due process of law. Accordingly, we reverse the district court.

## I. Background.

In the summer of 1978, the Havana School Board rehired Barham to serve a third year as school superintendent, under a contract commencing on July 1, 1978. Subsequently, a serious disagreement developed between the Board and Barham. At a school board meeting on July 3, 1978, Barham presented the annual financial report

1. The court concluded that the notice and hearing given to Barham otherwise comported with the requirements of due process.

2. Barham decided not to submit the breach of contract claim to the jury.

3. The court ruled that good faith was not a defense to this equitable award.

4. In authorizing the appeal under § 1292(b), the district court observed:

The Court is of the opinion that the portion of this order which re–affirms the finding that plaintiff's due process rights were violated involves a controlling question of law as to which there is substantial ground for difference of opinion. An immediate appeal from this order may materially advance the ultimate termination of this litigation. If this order is in error, there is no need for a second jury trial.

which showed a balance of approximately $11,000 in the operating fund. The treasurer's report showed a balance of approximately $9,800. Several board members believed that the balance was dangerously low. On July 11th, Barham sent the Board a letter, advising them that he had requested Dr. Pilkinton, Director of the Division of Finance and Administration of the Arkansas Department of Education, to look over the district's financial records, and that Dr. Pilkinton had indicated that the school district was in generally good financial condition. On July 18th, the Board held a special meeting to discuss finances and decided to supervise Barham's expenditures more closely. On July 28th, an article appeared in a local newspaper in which Barham defended his school expenditures.

Welch, the president of the school board, called a special meeting for July 31, 1978, to discuss a "serious personnel (superintendent) problem." Barham and his attorney attended this meeting at which the Board discussed school finances and the newspaper article, as well as Barham's outside activities as a teacher for Arkansas Tech University at Russellville, Arkansas, and as a deputy sheriff for Yell County.[5] After Barham stated that he would not consider resigning, the Board, meeting in executive session, decided to hold a hearing on August 4, 1978, to consider termination of Barham's contract. Frame voted against this decision. Barham received notice of the following charges against him:

1. That you have violated your contract with the Havana School District in regards to your outside teaching activities at Arkansas Tech University.

2. That you have violated your contract as a result of your duties as a law enforcement officer with the Yell County Sheriff's Department.

3. That you have been irresponsible in the management of the financial affairs of the Havana School District.

4. That your public utterances to the media have tended to bring discredit upon the Havana School, School Board, and the community in general.

Attending the August 4th hearing were Barham and his attorney, Board member Frame and his attorney (supporting Barham), and the other school board members and their attorney. Several hundred spectators also attended the meeting, many supporting Barham's retention as superintendent.

Welch presided at the hearing, and read into the record the following evidence: the charges against Barham; the notice of the hearing sent to Barham; Dr. Barham's July 1, 1978, contract;[6] a letter from an official of Arkansas Tech University stating that Barham was under a teaching contract with Arkansas Tech;[7] a newspaper article about a drug raid in which Barham participated; a newspaper article that included Barham's statement on the status of school finances; a statement from the county treasurer showing an operating fund balance of $5,318.14 as of August 4, 1978; a letter from Dr. Pilkinton to Barham indicating that the district financial condition was good, although the balance was "not as large as it perhaps should be;" a letter from Barham to the Board discussing Pilkinton's assessment of the school district's finances; and an auditing report showing that the fund balance as of July 1, 1977, was more than $25,000, but as of June 30, 1978, was less than $11,000.

---

5. Apparently some board members were aware of these activities prior to approving the July 1, 1978, contract. In July, however, an Arkansas Tech official verified Barham's teaching position and a county newspaper article publicized Barham's participation as deputy sheriff in a local drug raid.

6. All three contracts with Barham contained a provision which stated that

The Party of the Second Part [Barham] certifies that at the date of this contract he or she is not under teaching contract with another school district[.]

7. This letter also stated that Barham had taught several courses in both 1977 and 1978 and had earned $5,350 between January 10, 1977 and July 7, 1978.

Barham denied none of the essential facts underlying the charges. Rather, in his defense he argued that his actions did not warrant termination. He asserted that 1) his teaching position was not a breach of his contract, did not interfere with his responsibilities as superintendent, and provided additional income necessary to support his family; 2) his uncompensated service as deputy sheriff was not a breach of his contract and benefited the community; 3) the operating fund balance was abnormally low because an extensive building program, which improved the quality of education in Havana, was financed out of current funds rather than by loans; 4) his statement to the press was a justifiable response to untruthful rumors that he had bankrupted the school district.

After Barham testified, the members of the Board adjourned into executive session and voted four to one to discharge him, with Frame dissenting. Barham then brought this lawsuit.

## II. *Due Process Violation.*

The district court concluded that because the Board was not sufficiently impartial, Barham was deprived of property without due process of law. The court rested its conclusion on the following evidence. On examination by Barham's attorney school board member Mitchell testified:

Q Now, let me ask you, Mr. Mitchell, at that hearing, was there any evidence which Dr. Barham could have presented which have made you render a different decision than the one which you ultimately did at the conclusion of that meeting?

A I don't think so.

On examination by Barham's attorney, school board member Vess testified:

Q And my question is: can you bring to mind any circumstances [on August 4th] in which you would have voted to retain Dr. Barham?

A I still can't answer this question.

Q You can't imagine any circumstances?

A No, I didn't say that. I said personally I really liked–that's an unfair question. I really don't know what could have been done, if anything could have been done. I really can't say what I would have done at that time.

\* \* \* \* \* \*

[The Court] Go ahead and answer, Mr. Vess.

A I really don't think at that stage of the game–this is my personal opinion– would have changed anything. I sure don't.

On the basis of this testimony the district court concluded:

If two of the four participating members of the board would not under any circumstances have changed their minds, regardless of the evidence presented by Dr. Barham at the hearing, the hearing was useless from Dr. Barham's perspective. Although complete impartiality is not required, fundamental fairness necessitates that the members of the tribunal have no actual bias. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." *In Re Murchison*, 349 U.S. 133, 136, [75 S.Ct. 623, 625, 99 L.Ed. 942] (1954). Based upon their testimony, the Court must conclude that Messrs. Vess and Mitchell were not "capable of judging [this] particular controversy fairly on the basis of its own circumstances." *Hortonville Joint School Dist. No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 493, [96 S.Ct. 2308, 2314, 49 L.Ed.2d 1] (1976), quoting from *United States v. Morgan*, 313 U.S. 409, 421, [61 S.Ct. 999, 1004, 85 L.Ed. 1429] (1941).

[*Barham v. Welch, supra*, 478 F.Supp. at 1249.]

Based on the record as a whole and the policy considerations discussed by the Supreme Court in *Hortonville Joint School District No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 96 S.Ct. 2308, 49

L.Ed.2d 1 (1976), we conclude that this testimony does not demonstrate the degree of bias that disqualifies a decisionmaker under the due process clause.

In *Hortonville*, a Wisconsin school board unsuccessfully negotiated with its teachers and then dismissed them after they engaged in a clearly illegal strike. The Wisconsin Supreme Court held that the board's familiarity with the events leading to the strike prevented it from impartially evaluating the seriousness of the teachers' actions, which was necessary in deciding whether to dismiss them for striking or to use a less drastic remedy. 225 N.W.2d 658, 66 Wis.2d 469 (Wisc.1975). In reversing, the Court stated that

> [a] showing that the Board was "involved" in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. *Cf. Withrow v. Larkin*, 421 U.S. [35] at 47, [95 S.Ct. 1456 at 1464, 43 L.Ed.2d 712] [1975], [*Hortonville, supra*, 426 U.S. at 496–97, 96 S.Ct. at 2315–16.]

 At least in the absence of a claim of personal animosity, illegal prejudice, or a personal or financial stake in the outcome,[8] school board members are entitled to this presumption of honesty and integrity. *Hortonville, supra*, 426 U.S. at 497, 96 S.Ct. at 2316; *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Merely by its involvement in the events preceding Barham's discharge,[9] the Board

did not become so tainted as to lose this presumption. *Hortonville, supra*, 426 U.S. at 497, 96 S.Ct. at 2316; *Norbeck v. Davenport Community School District*, 545 F.2d 63, 69 (8th Cir. 1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). As the Court stated in *Hortonville*:

> Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *FTC v. Cement Institute*, 333 U.S. 683, 700–703, 68 S.Ct. 793, 803–805, 92 L.Ed. 1010 (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); see also *FTC v. Cement Institute, supra*, at 701, 68 S.Ct. at 803. [*Hortonville, supra*, 426 U.S. at 493, 96 S.Ct. at 2314.]

 The district court's conclusion that the Board could not judge the controversy fairly rested solely on the responses given by board members Vess and Mitchell to the hypothetical questions. The four board members who voted for termination were asked whether Dr. Barham could have presented any evidence that would have changed their minds about voting to dismiss Barham. Vess and Mitchell answered that they did not think so;[10] Chairman Welch speculated that he might have voted differently with a "drastic" change in the evi-

---

**8.** The record shows no evidence of this type of actual bias.

**9.** During trial Barham's counsel questioned the board members about their knowledge prior to the hearing. This testimony showed that through correspondence, newspaper articles, and meetings the board members gained information that substantiated the charges and learned of Barham's justifications for his actions. Counsel implied in his questioning that as a result of this knowledge, the board mem-

bers made up their minds before the hearing. The district court, however, did not base its finding of actual bias on the Board's prior involvement.

**10.** While Mitchell answered, "I don't think so," Vess responded, "I really don't think at that stage of the game–this is my personal opinion– would have changed anything. I sure don't."

dence;[11] and Tougaw vaguely alluded to further consideration if Barham's attitude had been more conciliatory.[12] The district court found that the answers of Welch and Tougaw did not demonstrate bias, but that the answers given by Vess and Mitchell showed that they decided to fire Barham prior to his hearing. The court concluded that their irrevocable prejudgment tainted the termination proceeding seriously enough to constitute a due process violation. Examining the record as a whole, we conclude that under the circumstances of this case, the testimony of board members Vess and Mitchell is insufficient as a matter of law to demonstrate irrevocable prejudgment. *See Withrow v. Larkin, supra,* 421 U.S. at 48, 95 S.Ct. at 1465 (discussing *FTC v. Cement Institute,* 333 U.S. 683, 701, 68 S.Ct. 793, 803, 92 L.Ed. 1010 (1948)).

The hypothetical question required each board member not only to speculate whether anything could have changed his mind, but also to imagine what particular evidence might have altered his decision. The hypothesis contained no "assumed evidence." Barham did not change his position on the charges nor did he present any new evidence in his defense at the hearing. Under these circumstances, the mere failure of the two board members to "imagine" evidence that could have changed their minds cannot overcome the presumption of their honesty and integrity.

In addition, the answers given by board members Vess and Mitchell are too indefinite to demonstrate bias. Vess and Mitchell testified that they did not make up their minds until the August 4th hearing. Both gave equivocal responses to the hypothetical question. *See* note 10 *supra.* In fact, Vess repeatedly maintained that he was unable to answer what he considered an unfair question. On cross–examination by his counsel, Vess indicated that he might have changed his mind if Barham had produced different evidence,[13] which is substantially the same testimony given by the

11. Q Now, Mr. Welch, was there anything or evidence that Dr. Barham could have said or done or presented that would have changed your mind and caused you not to vote for his dismissal?
 A It's possible, yes. It would have had to have been rather drastic, I would assure you, but it was possible.
 Q Well, could you suggest to the jury something that he might have done that would have caused you not to have voted for his dismissal?
 A I couldn't make an accurate statement that he done any one thing that I wouldn't have. I don't know.

12. Q Mr. Tougaw, you heard Mr. Welch, Mr. Vess, and Mr. Mitchell's answers to the questions concerning whether or not there is any evidence that Dr. Barham could have presented on August the 4th, which would have caused them to change their minds and not vote for his termination.
 I ask you was there any evidence that you can think of that Dr. Barham could have presented that afternoon which could have caused you to vote differently?
 A There could have been different things. If his attitude had been different and he had asked us for us–to let us reconsider some of the past, some of the things that had happened, but I don't recall that ever being asked.

Q Mr. Tougaw, are you saying that Dr. Barham asked you as the board or asked you personally to reconsider some of the allegations that you might not have voted for termination if he had taken a different attitude on this?
 A I would have had a long look and they would have. I would have really considered it.

13. BY MR. LIGHT:
 Q Mr. Vess, Mr. Donovan asked you some hypothetical questions about the state of your mind at the time of the August 4 hearing.
 Let me ask you a hypothetical question about that same subject. If at that hearing Dr. Barham had come in and produced evidence that convincingly showed you an entirely different picture, a satisfactory financial picture for the district, and had said there at this hearing that he would put outside teaching commitments and devote full–time to being a superintendent, and that he would quit his deputy sheriff's connection and quit wearing a uniform and a gun, if he would have shown all of those things, do you think that you might have changed your mind about how you voted?
 MR. DONOVAN: Your Honor, at this point, I would interpose an objection on the grounds that no proper foundation has been laid to determine a satisfactory financial condition.

two "unbiased" board members. *See* notes 11 and 12 *supra.*

At the most, the record as a whole demonstrates that the board members tentatively, but not irrevocably, had formed an opinion concerning Barham's termination based on their previous official involvement with Barham. Under the principles enunciated in *Hortonville, supra,* and *Norbeck, supra,* the evidence is insufficient to permit a finding of actual bias or improper judgment in this case.

Accordingly, we direct the district court to enter a judgment of dismissal on the plaintiff's section 1983 action.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The district court found:

> [T]he plaintiff was deprived of property without due process because the school board was not sufficiently impartial. * * * *Messrs. Vess and Mitchell had their minds made up before the hearing on August 4, 1978; there was no evidence which Dr. Barham could have presented which could have changed their minds about terminating his contract.* * * *

The portions [of the record] which are determinative are as follows:

> Q. Now, let me ask you, Mr. Mitchell, at that hearing, was there any evidence which Dr. Barham could have presented which have [sic] made you render a different decision than the one which you ultimately did at the conclusion of that meeting?
>
> A. [Mr. Mitchell] I don't think so.
>
> * * * * * *
>
> Q. * * * I want you to think for a moment and tell me if there could

have been any circumstances under which you would have voted to retain Dr. Barham. Tell the jury what could have been—

> MR. LIGHT: Objection, Your Honor. This is the third time and the witness has answered twice that he can't answer this hypothetical question.
>
> THE COURT: Overruled. The witness has refused to answer the question. The Court thinks it is a proper question. Go ahead and answer, Mr. Vess.
>
> A. [Mr. Vess] I really don't think at that stage of the game—this is my personal opinion—would have changed anything. I sure don't.

*If two of the four participating members of the board would not under any circumstances have changed their minds regardless of the evidence presented by Dr. Barham at the hearing, the hearing was useless from Dr. Barham's perspective.*

*Barham v. Welch,* 478 F.Supp. 1246, 1248–1249 (E.D.Ark.1979) (emphasis added).

The majority ignores these findings and substitutes itself as the fact finder. On the basis of its conclusion that neither Mitchell nor Vess made up his mind until the August 4th meeting, it holds that no due process violation occurred. In my view, we are bound by the district court's findings unless we are prepared to state that they are clearly erroneous, and this I cannot do.

It is clear from *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), that "mere familiarity" with the facts of a case, gained by a member of the Board of Education in the performance of his or her statutory role, does not disqualify that

There was no board policy related to a satisfactory financial condition.

THE COURT: Overruled.

MR. DONOVAN: Thank you, Your Honor.

BY MR. LIGHT:

Q Might that have changed your mind on the way you voted?

A I will say this. We would have talked about it a long time in harmony. I didn't have no hard feelings toward anybody.

I personally felt that we had come to a point of no return. If Dr. Barham had approached me with that idea, we would have had a long talk. I promise you that.

Board member from deciding the case; but that is not the situation here. The district court found that two Board members had rendered themselves incapable of judging the controversy by taking the position that they would not change their mind on the question of whether Barham should be dismissed regardless of the evidence presented by Barham.

*Hortonville* also establishes the principle that a decisionmaker is not disqualified simply because he has taken a position on a policy issue related to the dispute; but again, that is not the situation here. In *Hortonville*, the Board of Education had no factual issues to decide. Here, there were a number of such issues to be determined and two members of the Board closed their minds on the factual disputes before Barham had a chance to give his version of the facts. In my view, the district court correctly decided the issues of fact and law presented to it and its decision should be affirmed.